EWART, *Appellant*, v. DAVIS.

EWART, *Appellant*, v. HAYTER.

1. **Tax Sale.** It was essential to the validity of a tax sale under the Revenue Act of 1872, that the "special execution record" should include a copy of the judgment and order of sale of the county court certified by the clerk under the seal of the court. See Wag. Stat., p. 1200, ? 195.

2. **Tax Deed, Prima Facie Valid.** Under the foregoing act, a tax deed regular upon its face was *prima facie*, and not conclusive, evi‑ dence of compliance with the requirements of the act. To impeach it any matter might be shown which, aside from mere omissions oɪ irregularities, went to establish a substantial non-compliance with the act, as *ex. gr.*, that no judgment, or valid judgment, was ever rendered against the land, or that no special execution was ever de‑ livered to the collector. Or if it was not liable to objection on any such grounds as these, then it might be shown either that the land was not subject to taxation, or that the taxes had been paid, or that the land had been redeemed since the sale.

*Appeal from DeKalb Circuit Court.*—HON. JOSEPH P. GRUBB, Judge.

AFFIRMED.

This was an action of ejectment for land in DeKalb county. Plaintiff claimed title through a tax deed, made in pursuance of a sale for the taxes of 1872. To show that this deed was invalid, the defendant gave in evidence the following:

1. The general record book of the county court, ɪn which appeared the following entry: "G. B. Atterberry, *ex parte.* Now, on this day comes G. B. Atterberry, col‑ lector of the State and county revenue within and for De‑ Kalb county, Missouri, and presents here into court under oath a list of the lands and town lots of said county on which the taxes of 1872 still remain due, unpaid and de‑ linquent, and having made proof of legal notice of appli‑ cation to be made at this term of court for judgment and order of sale against said real estate to satisfy the lien of

the State of Missouri thereon, it is ordered by the court that whereas due notice has been given of the intended application for a judgment against the several tracts of land and lots of ground described in the foregoing list, and no sufficient defense having been made or cause shown why judgment should not be entered against said lands and lots for the taxes, interest and costs, due and unpaid thereon for the year or years herein set forth, therefore it is ordered, adjudged and decreed by the court that judgment be and is hereby entered against the several tracts of land and lots of ground or parts of tracts or lots described in the foregoing list, in favor of the State Missouri to enforce the lien thereon for the sum annexed to each, being the amount of taxes, interest and costs due severally thereon; and it is further ordered, adjudged and decreed that the several tracts of land or lots of ground, or parts of tracts or lots, or so much thereof as shall be sufficient of each of them to satisfy the amount of taxes, interest and costs annexed to them severally be condemned and be sold to satisfy the same as the law directs."

No list of lands appeared anywhere in said book.

2. A book entitled as follows: "Judgment Book, DeKalb County, Missouri. A list of lands and lots reported by G. B. Atterberry, collector of the revenue of DeKalb county and State of Missouri, for the year 1872, upon which he has been unable to collect the taxes (if any) due thereon, and now, on this 22nd day of July, 1873, files this his petition for a judgment to enforce the lien of the State of Missouri against the tracts of land and lots of ground therein described, and for an order of sale against said lands and lots at the July term, 1873, of the county court."

This list included the land in controversy. At the foot of the list a judgment in the exact form prescribed in section 192 of the Revenue Law of 1872, was entered as of July 22nd, 1873, and signed by the presiding justice

of the county court, and attested by the clerk with the seal of the court.

3. A book purporting to be the special execution record for taxes of 1872. This book contained a copy of the list against which judgment was rendered, but contained no copy of the judgment, nor was it certified by the clerk. Other facts appear in the opinion of the court.

Section 219 of the Revenue Act of 1872, so far as it prescribes the force and effect of a tax deed, is as follows: " Deeds executed by the collector under the provisions of this act shall be held and received, in all places where the title to the real estate thereby conveyed is involved, as *prima facie* evidence that each and every act and thing required to be done by the provisions of this act has been complied with; and the party offering such deed in evidence shall not be required to produce the judgment, precept nor any other matter or thing as evidence to sustain such conveyance and the title thereby acquired; *Provided, however,* That the party controverting such deed and the title thereby conveyed may, for the purpose of invalidating or defending the same, show either one of the following facts, only: 1st, That the land conveyed by such deed was not subject to taxation at the time of the assessment thereof, under which assessment such sale was made; 2nd, That the taxes due thereon had been paid, according to law before the sale; 3rd, That such land had been duly redeemed, according to law, or that tender of the redemption money had been made before the execution of such deed."

*Ramey & Brown, Vinton Pike* and *Bennett Pike* for appellant.

*Thos. E. Turney* for respondent Davis.

*Simrall & Sandusky* for respondent Hayter.

The collector had no authority to sell because no such execution as is required by section 195 was ever issued. The record admits that he had a memorandum, handed him by the county clerk, of the land and amount of taxes; but it contained no copy of the judgment, or of the order of sale, nor was it certified to in any manner or authenticated by seal, and was plainly a mere unofficial memorandum. To have conferred any authority upon the collector to act, it should have contained a copy of the judgment and order of sale, and should have been attested by the clerk's certificate, with the seal of court attached. *Boal v. King*, 6 Ohio 11 ; *Ins. Co. v. Hallock*, 6 Wall. 556; *Hannel v. Smith*, 15 Ohio 134.

*S. G. Loring* also for respondent Hayter.

There is not attached to said pretended execution any copy of any judgment of the county court against the lands in suit for said tax of 1872, and neither is there attached thereto any certificate of the clerk of the truth of said record or copy. And the reason why said clerk did not attach to said pretended process said judgment and his certificate must have been because: 1st, There never was a judgment record of the lands in suit for said tax; 2nd, Because there never was any judgment or order of sale, made and entered by the county court for said tax against the lands in suit.

Sherwood, C. J.—It is altogether unnecessary to notice but one of the numerous points which have been discussed, since that point is decisive of this case. It is this : Section 195 of the Revenue Law requires that the county clerk " make a correct copy from the judgment record of the lands and lots against which judgment is rendered in any suit for taxes, interest and costs due thereon, with the description of the property, the amount due on each tract or lot, and the year or years for which

1: TAX SALE.

the same is due, in the same order as said property may be set forth in the judgment book, and shall attach thereto a correct copy of the judgment and order of sale of the court, and his certificate of the truth of such record or copy, which record or copy so attested shall hereafter constitute the process on which all real property, or any interest therein, shall be sold for taxes, as well as the record 'for sale of such property, and the said copy shall be deemed and held to be a special execution against the tracts of land and lots of ground therein described to enforce the liens of the State thereon for the taxes," etc. The next section provides that the record or copy before mentioned, shall be known and designated as the "special execution record."

In the case before us, the law quoted has not met with compliance, in that the " special execution," " the process," " the record for sale of such property," " the special execution record," has not attached thereto, a copy of the judgment.and order of sale of the county court, nor is there thereto attached, the clerk's certificate in accordance with the statutory requirement already quoted. This failure we regard as fatal to plaintiff's case. The so-called execution not containing a copy of the judgment rendered and order of sale made by the county court, not being authenticated by either the signature or seal of the clerk, must be regarded as a nullity in law, and consequently conferring no power whatever on the collector to sue ; in short, as so much blank paper, or no execution at all, since it lacks the essential elements of a judgment and order of sale, and the authenticity of the attestation of the clerk. Were we discussing an ordinary *fi. fa.*, and a sale of land thereunder, no one would pronounce a sale valid in circumstances similar to those in the present instance, and we do not see how the position of the plaintiff is any whit bettered because of this being a tax sale instead of an ordinary one by the sheriff. No sheriff, we apprehend, has ever had the temerity to sell the property of a judgment

defendant under a paper so lacking as the present one in all the *indicia* of authority and genuineness.

In Indiana, "a paper," as it is expressively termed, was issued by a justice of the peace to a constable, which merely recited the rendition of a judgment as appeared of record on his docket, with the addition of the words, "by levy and sale of the goods" of the judgment defendant, "and make return thereof within six months from date," but contained no words of command or direction to the constable, and it was held that such "a paper" did not justify the officer in levying on the goods of the defendant, because of lacking such mandatory words. *Gaskill v. Aldrich*, 41 Ind. 338. Now in the case at bar, the order of the county court, as provided for in section 192 of the Revenue Law, is the command of the court to the collector to sell the property of the defendant, but no such order was ever delivered to the collector; for the clerk of the county court, Putnam, testified expressly that the "special execution record" in evidence was the process issued by him to the collector for the sale of the lands in controversy, and consequently we can but hold that he was powerless to act in the premises.

And this conclusion is by no means affected because section 219 of the Revenue Law makes the tax deed *prima facie* evidence of its own recitals, and allows such deed and the title thereby conveyed to be overthrown by showing one of the following facts "only:" 1st, That the land conveyed by such deed was not subject to taxation, etc.; 2nd, That the taxes due thereon had been paid before sale; 3rd, That the land had been duly redeemed, etc.

2. TAX DEED, PRIMA FACIE VALID.

Formerly the law was so drawn that the recital of the tax deed was made conclusive evidence except as to the three particulars just noted. But after the decision in *Abbott v. Lindenbower*, 42 Mo. 162, determining that the legislature had no constitutional power to make such deeds conclusive evidence to such an extent as to cut off all in-

quiry as to whether steps vitally essential to the exercise of the taxing power had been taken, the legislature met and changed the section in question, so as to make it read as already quoted. This change is most significant, coming so soon, as it did, after the ruling mentioned and evidently means "something."

Nor was the change of "conclusive" to *"prima facie"* the only change made by the legislature at that session. For by section 211, (Laws 1872, p. 127,) a new one, it is provided that: "The assessment books, and all books, papers and records in the office of the clerk of the county court appertaining to the subject of taxation, or copies thereof duly certified by such clerk, shall be evidence in all courts in all controversies concerning the validity of the sale of lands for taxes;" as if the legislature were not only not content to merely reduce the tax deed from the high plain of conclusive, to that of *prima facie* evidence, but went further and pointed out the very means whereby the *prima facie* character of the tax deeds could be controverted and overthrown.

And aside from the very pointed and pertinent provisions of section 211, *supra*, it must be obvious to every one that a tax deed, if but *prima facie* evidence of the truth of the recitals it contains, cannot in the nature of things, occupy any better footing than would a sheriff's deed, which the law, also, declares to be *prima facie* evidence. To hold otherwise and to hold that the tax deed is but *prima facie* evidence of all the matters it recites, and yet not subject to be controverted except because of the three things section 219 contains, in effect would be to restore the law to its former condition in defiance of the constitution and of the legislative will.

The rule is a familiar one, that, if possible, every section of a law should be made to harmonize with every other section of the same statute, rather than conflict therewith. Making the endeavor to harmonize the different sections of the act under discussion, we have reached the

conclusion that all that is intended by section 219 and the exceptions it contains, is simply this: That where a plaintiff in ejectment comes into court with a tax deed regular in all its features, he makes out thereby a *prima facie* case and may there rest; the defendant may thereupon, by availing himself of the provisions of section 211, *supra,* show any matter which, aside from mere omissions or irregularities, goes to establish a substantial non-compliance with statutory provisions, as *ex. gr.:* that no judgment, or valid judgment, was ever rendered against the land; or that no special execution was ever delivered to the collector; and in case the defendant fail in manner as aforesaid, it is still open to him to avail himself of one of the exceptions section 219 contains, and show that notwithstanding the title of the plaintiff is valid as to all else, yet that still it must fail, because of the existence of one of the three facts which that section pronounces sufficient to invalidate a title otherwise good. For these reasons we affirm the judgment. All concur.

In *Ewart v. Hayter,* RAY, J., delivering the opinion of the court, said: This case on all material points, is substantially like that of the same plaintiff against Ishmael Davis, decided at the present term, and for like reasons the judgment is affirmed. All concur.