Spurlock v. Dougherty.

SPURLOCK, *Plaintiff in Error*, v. DOUGHERTY *et al*

1. **Tax Deed**: EVIDENCE, A tax deed made by the county treasurer as *ex-officio* collector, is void and not admissible in evidence, in the absence of proof that the office of collector has devolved upon the treasurer by reason of the adoption of township organization by the county.

81 171
47a 469

81 171
113 40

81 171
124 21

81 171
159 653
84a 154

81 171
e169 5384
169 387

2. **Judicial Noitce:** TOWNSHIP ORGANIZATION. Courts will not take judicial notice of the adoption of township organization, but the party seeking to avail himself of it must prove it by extrinsic evidence.

3. **Tax Sale:** DEED: NOTICE. A regular notice, published as the law requires, is the very foundation of the collector's authority to sell land for taxes, and the property of the citizen cannot be divested by this kind of sale, unless it appears affirmatively from the form of the collector's deed, that all the requirements of the statute have been strictly pursued.

4. ———: ———: ———. Where the revenue law, (2 Wag. Stat., p. 1196, ? 182,) fixes a term of the county court held the first Monday in July, as the term at which such court has jurisdiction to render judgments for taxes, or any subsequent regular term, provided he shall give due notice thereof, (*Ib.*, ?? 183, 188,) and the notice given is to the August adjourned term, such notice does not constitute a compliance with the requirements of the statute, is worthless for the purposes intended, and a deed procured upon such notice is void and inadmissible in evidence.

5. **Taxes:** SUIT TO AVOID SALE: LIMITATION. The statute requiring a suit for the recovery of lands sold for taxes, or to defeat or avoid the sale, to be brought within three years from the time of recording the tax deed, (2 Wag. Stat., p. 1207, ? 221,) does not apply where the owner is in possession.

6. **Ejectment:** PRIOR POSSESSION. Prior possession which is sufficient and necessary to maintain ejectment, must be visible, notorious, continued and actual, and must not differ from adverse possession.

*Appeal from Pettis Circuit Court.*—HON. J. P. STROTHER, Judge.

AFFIRMED.

*J. P. Ross, O. A. Crandall* and *R. F. Walker* for plaintiff in error.

The tax deed offered in evidence sufficiently conforms to the requirements of the statute. 2 Wag. Stat., p. 1205, § 217. It is no objection that the judgment for the sale of the land was rendered at an adjourned term of the county court. The statute provides for this. 2 Wag. Stat , p. 1196, § 183. This case is governed by section 184, 2 Wagner's

Statutes, 1196, and not by section 188. All business transacted at an adjourned term of the county court is as valid as if done at a regular term. *Higgins v. Randall*, 13 Mo. 205 ; Wag. Stat., p. 442, § 18. It was not necessary to recite the precise day of rendering the judgment. That could be readily ascertained by inspection of the record. *Warren v. Sharp*, 53 Mo. 589 ; *Davis v. Peveler*, 65 Mo. 189. Defendant's entry and right of action was barred by the three years' special limitation. 2 Wag. Stat., p. 1207, § 221. Under proper instructions plaintiff would have recovered on his prior possession.

*Philips & Jackson* for defendants in error.

The tax deed was properly excluded, for the following reasons : (1) The statute directs the county collector to make the sale and execute the deed. Sec. 216, vol. 2, 1872. The deed shows on its face that it was made by the county treasurer as *ex-officio* collector. Under the general statute they are separate offices. Stat. 1872, vol. 2, p. 1178. There is but one contingency, under the law, at the time of making the deed, under which the duties of collector could be exercised by the treasurer, and that was the instance of township organization in the county. But courts will not take judicial notice of this, and it must be brought to their notice by extrinsic evidence. *Robinson v. Jones*, 71 Mo. 582 ; *Ober v. Pratt*, 1 Mo. 80 ; *Summers v. Tice*, 1 Mo. 349 ; *Gorman v. Railroad Co.*, 26 Mo. 453 ; *Southgate v. Railroad Co.*, 61 Mo. 90, 95. (2) The deed shows on its face that the judgment was rendered at the August adjourned term, 1872, of the county court. There is no such term known to the law, for rendering judgments in tax cases. The third Monday in July is designated by the statute as a special term for rendering such judgments. Rev. Act 1872, § 182. If the collector is prevented from obtaining judgment at such term, he may do so at any subsequent regular term. Sec. 188. The cases of *Warner v. Sharp*, 53 Mo.

598, and *Davis v. Peveler*, 65 Mo. 189, are not in point. They were proceedings for the foreclosure of school mortgages under the school law. No notice of application for judgment was necessary, and judgment might be rendered in the form of an order, at a general or adjourned term, as other ordinary county business is transacted. *Hurt v. Kelly*, 43 Mo. 238. The recitals of such deeds are always, as they should be, strictly construed. The notice on which judgment was rendered says it was at the August adjourned term. No day or week is given. No land owner could know when such court would be held. No judgment could be rendered on such notice, nor at such a term as that recited in this deed. This notice, so the deed says, gave only the time and place of sale, but it did not advise anybody that this land would be exposed to sale, nor for "the amount of taxes, interest and costs due thereon." It appears from the deed that the sale was made on the 14th day of October, but the deed does not recite that the collector gave notice that he would sell on the 14th day of October. (3) The deed does not show that any taxes were ever assessed against this land, as the law requires it should. Sec. 217. So far as the recitals of the deed were concerned, the tax may have been a personal tax, and not a tax on the land. *Hubbard v. Johnson*, 9 Kas. 632. (4) The statute provides that each tract of land shall be charged with its own taxes, and be sold separately for the same. Cooley on Taxation, 342; *Hayden v. Foster*, 13 Pick. 492; *State ex rel. v. Sargent*, 76 Mo. 557. This deed shows that several distinct tracts of land were included in the judgment and sale, tracts belonging to different owners. (5) Under the statute the purchaser was not entitled to a deed until the expiration of two years after the completion of the sale. It should, therefore, affirmatively appear, when the purchaser offers such deed in evidence, that the statutory period had elapsed. There is nothing on the face of the deed to show when it was, in fact, made. While the *testatum* recites October 16th, 1874, such deed can become operative only

by virtue of the acknowledgment made in pursuance of the statute. 57 Mo. 552; *Dunlap v. Henry*, 76 Mo. 106. To determine when it was executed, reference must be had to the certificate of acknowledgment. In this certificate the day of the month is blank. *Bull v. Griswold*, 19 Ill. 634, top p. (6) The certificate of acknowledgment is not in conformity to section 217 of the statute, nor does the *testatum* of the clerk comply with the form given in said section. Blackwell Tax Titles, p. 406, § 5; *Williams v. McClanahan*, 67 Mo. 501; *Abbot v. Doling*, 49 Mo. 302; Cooley on Tax., 334, 335, 336; *Ewart v. Davis*, 76 Mo. 129. The statute, limiting suit for recovery, or to avoid a sale or conveyance of lands for taxes (§ 221) to three years from the recording of the tax deed, has no application to the facts of this case. It does not apply to the case of a void deed, nor where the land is unoccupied. *Lain v. Shepherd*, 18 Wis. 59; *Cutter v. Hurlbut*, 29 Wis. 152; *Taylor v. Miles*, 5 Kas. 512; *Shoot v. Walker*, 6 Kas. 65; *Groesbeck v. Seely*, 13 Mich 330; *Hall v. Rittenhouse*, 19 Pa. St. 10; *McReynolds v. Longenberger*, 57 Pa. St. 29; *Miller v. Corbin*, 46 Iowa 150; *Moore v. Brown*, 11 How. (U. S.) 414. There was no occupancy of the land. Herding cattle upon open land is but fictitious occupancy, and is not indicative of a change of proprietorship. *Bradstreet v. Kinsella*, 76 Mo. 63; *Woodworth v. Fulton*, 1 Cal. 310; *Polack v. McGrath*, 32 Cal. 15; 4 Cal. 94. There must be that in the appearance of the premises themselves to show to the world that there is still a person in possession. *S. W. V. R. R. & C. Co. v. Quick*, 68 Pa. St. 189; *Empson v. Giberson*, 1 Dutcher 1; *Crispin v. Hannavan*, 50 Mo. 536; *Cooper v. Ord*, 60 Mo. 421. Dougherty and Murphy entered as purchasers under Parker, and he had no notice whatever of any occupation. This would protect his tenants and vendees. *Bartlett v. Glasscock*, 4 Mo. 62; *Lemay v. Poupenez*, 35 Mo. 71. Defendants took possession of the land under color of title, so that they could not be treated as trespassers by anybody save the true owner. *Rannels v. Rannels*, 52 Mo. 108, 112.

EWING, C.—This is an ordinary suit in ejectment, charging an unlawful entry, and wrongful holding possession of the land sued for, on the 1st day of March, 1878.

The defendants' answer was a general denial of all plaintiff's allegations, except that defendant was in possession of the premises sued for. Plaintiff offered to read the following deed:

TAX DEED.

STATE OF MISSOURI, |
  County of Pettis. }

Know all men by these presents, That whereas, at the August (adjourned term) A. D. (1872), eighteen hundred and seventy-two, of the county court of Pettis county, a judgment was obtained in said court, in favor of the State of Missouri, against the following described tracts of land, situate in Pettis county, State of Missouri, to-wit: The southwest quarter and the south half of the northwest quarter of section No. 10, in township forty-three (43), range twenty-three (23), for the sum of forty dollars and twenty-five cents ($40.25), assessed to Emily Morrison, for taxes due for the year 1871. Also against the southwest quarter of the southwest quarter of section No. 1, township 43, range 23, for the sum of twenty-four dollars. Also against the northeast quarter of the southwest quarter of section No. 1, in township 43, range 23, for the sum of thirty-one dollars. Also against the southeast quarter of the southwest quarter for the sum of twenty-three dollars. The three latter tracts assessed to W. S. Clinton for the years 1868, 1869 and 1871, being the amount of taxes, interest and costs due and unpaid on the aforesaid tracts of land respectively for the said years.

And whereas, on the 14th day of October, A. D., 1872, W. P. Paff, collector of the county aforesaid, by virtue of a special execution, issued out of the county court of Pettis county, State of Missouri, dated the 16th day of September, A. D., 1872, and to the collector of said county directed, did

expose to public sale at the court house in the county aforesaid, after having first given at least four weeks' public notice of the intended application to the county court of said county of Pettis, at the August adjourned term thereof, for judgment against said lands, and of the time and place of sale thereof, by advertisement in the Weekly Sedalia *Times*, a newspaper printed and published in the city of Sedalia, Pettis county, Missouri, and in conformity with all the requirements of the statutes in such cases made and provided, the tracts of land above described for the satisfaction of the judgment so rendered as aforesaid.

And whereas, at the time and place aforesaid, James A. Spurlock, of Versailles, Missouri, having offered to pay the aforesaid sums of money due for taxes, interest and costs on said lands, which was the least quantity bid for, the whole of said tracts was stricken off and sold to him.

Now therefore, I, Adam Ittel, treasurer and *ex-officio* collector of Pettis county, State of Missouri, in consideration of the premises and the said sums of money paid to the collector of Pettis county, in hand for the taxes, interest and costs due and unpaid on said lands, by the said James A. Spurlock, at the time of the aforesaid sale, and by virtue of the statutes in such cases made and provided, have granted, bargained and sold, and do by these presents grant, bargain, sell and convey unto James A. Spurlock, his heirs and assigns, the above described tracts or parcels of land to-wit: The southwest quarter and the south half of the northwest quarter of section No. ten (10), and the northeast quarter of the southwest quarter, and the southwest quarter of the southwest quarter, and the southeast quarter of the southwest quarter of section No. one (1), all lying in township forty-three (43), range tweenty-three (23), in Pettis county, Missouri. To have and to hold to himself, his heirs and assigns forever, subject, however, to all the rights of redemption provided by law.

In witness whereof, I, Adam Ittel, treasurer and *ex-officio* collector, as aforesaid, by virtue of the authority

aforesaid, have hereunto subscribed my name and affixed my seal.  This the 16th day of October, 1874.

(SEAL)                                            ADAM ITTEL,

Treasurer and *ex-officio* collector of Pettis county, Mo.

STATE OF MISSOURI, }
  County of Pettis.  }

Be it remembered that on this day comes before me Adam Ittel, treasurer and *ex-officio* collector of the county of Pettis, and state aforesaid, who is personally known to me to be the treasurer and collector of the county aforesaid, and the same person whose name is subscribed to the foregoing instrument of writing as a party thereto, in favor of James A. Spurlock, and acknowledged the same to be his official act and deed, for the use and purpose therein contained.  Recorded on the sale book of 1872.  This —— day of October, A. D., 1874.

In witness whereof, I have hereunto set my hand, and affixed my seal of the county court of Pettis county, at office in Sedalia, this —— day of October, 1874.

R. H. MOSES,
Clerk of county court.

Filed for record, October 16th, 1874, at 10:30, A. M.

J. D. CRAWFORD,
Recorder.

Recorded in Tax Record B, page 149 and 150.

J. D. CRAWFORD,
Recorder.

On motion of plaintiff, the deed was excluded.

The objections to this deed, made by defendants, were that: 1. "The deed shows that judgment was rendered for the taxes, at the August adjourned term of the county court, and not at the July term, or any regular term.  2d.  It appears from the deed, that the notice which the collector gave, was that he would apply at the August adjourned term of the county court for judgment, without giving any date when said term would be held.  3rd.  Because the deed does not recite, that any application was made for such

judgment to the county court. 4th. The deed does not show that the taxes for which the land was sold, were ever assessed against the land. 5th. That it is not acknowledged as required by law. 6th. It is not in conformity to the form prescribed by the statute."

Plaintiff then offered a lease made by himself to one Marti, dated April 18th, 1877, for one year, in consideration that Marti should pay the taxes for 1877, and to be good for the second year, if Marti so desired, provided he build "a corral of plank and posts next year, to remain on the land, sufficient to hold 150 cattle." Plaintiff then introduced evidence tending to prove that the land was unenclosed prairie, that Marti used it for grazing purposes until October, 1877, when he took his cattle off, and used it no more that winter.

The evidence then tends to show that in February, 1878, the defendants took possession, and commenced fencing, and that then, Marti came on to the land and put up a zigzag pen about fifty feet square, with plank sixteen feet long; a post at each end, and two planks to the panel. That Marti's herding and grazing during the summer of 1877 was well known in the neighborhood; that he did not come to fence the cattle pen until he was told defendants were fencing the land; that Marti told Dougherty he had leased it for grazing purposes, and Dougherty told him he had bought it, and was going to enclose and cultivate it; that he did fence it, and broke a part of it and used it.

The evidence then showed that the land was entered by one Thomas Anderson prior to 1858.

Defendants offered a deed from Thomas Anderson to J. H. Caldwell, dated May, 1861, or rather the record of a deed, which was objected to and excluded because it appeared to be a copy of the records from Johnson county, when the land was in Pettis county. Defendants then offered a deed dated May 3rd, 1866, from the Sheriff of Pettis county to Thomas T. Crittenden; and from Crittenden to Elizabeth J. Morrison, dated September 2nd, 1867, and

from Elizabeth Morrison to Edward H. McClellan, dated September 22nd, 1877, and a deed from McClellan to defendant Parker, acknowledged September 25th, 1877. Parker testified that he had sold the land to the other defendants, and given them a bond for title. The plaintiff also offered evidence to show that he had paid the taxes on the land for the years 1872, 1873 and 1877.

I. The tax deed offered in evidence, as the basis of plaintiff's title, shows on its face, that it was sold by Wm. Paff, collector of Pettis county, whilst the deed is made by Adam Ittel, "treasurer and *ex-officio* collector of Pettis county." The law directs the county collector to execute the deed. 2 Wag. Stat., p. 1205, § 216. This deed seems to have been made by the county treasurer as *ex-officio* collector. Under the general law, they are separate offices. 2 Wag. Stat., p. 1178, § 92. 1 Wag. Stat., p. 410, § 1.

The sale was made by the county collector Paff, proper, as late as October, 1872; if there was any change in the local organization of the county subsequent thereto, so as to devolve the duties of county collector on the treasurer, that fact should have been made to appear affirmatively by the party offering the deed. For there is but one contingency, under any statute in force at the time of the alleged making of the deed, under which the functions of collector could be exercised by the treasurer; and that was in the instance of a township organization in that county. And as the organization by townships was a matter optional with each county, the adoption thereof by this county, if it ever did, was a matter resting so far *en pais*, that the courts will not take judicial cognizance of the adoption. It is a fact which the party seeking to avail himself of on trial, must bring to the notice of the court by extrinsic evidence. *Robinson v. Jones*, 71 Mo. 582, 584; *Ober v. Pratte*, 1 Mo. 80; *Sumners v. Tice*, 1 Mo. 349; *Southgate v. A. & P. R. R. Co.*, 61 Mo. 89; *Gorman v. P. R. R. Co.*, 26 Mo. 441.

II. The deed shows on its face that the judgment was rendered at the "August adjourned term, 1872." Section

182, 2 Wagner's Statutes, p. 1196, provided that county courts shall have jurisdiction to render judgments for taxes, " and there shall be a term of said court held in the several counties, on the third Monday of July, annually, for that purpose." Section 183 provides that, if from "any good cause," the collector is prevented from obtaining judgment on the first Monday in July, he may apply at any succeeding term, and sell on some day other than the first Monday in October; "provided that he shall have given due notice of the time of such application and sale." Section 188 also provides that, if judgment be not obtained at the term at which judgment is prayed, judgment may be obtained at some subsequent regular term of said court.

The notice given by the collector for judgment and for sale, was notice of an application to the August adjourned term. This was not a compliance with the statute which required notice of application to the special term, as provided by section 182, *supra*, or to some subsequent regular term. There was no authority of law for an application to an adjourned term of court, and the notice was worthless for the purposes intended. The notice is the indispensable prerequisite, and without it the court had no jurisdiction. In *Large v. Fisher*, 49 Mo. 307, Judge Adams says: "A regular notice published as the law requires, is the very foundation of the collector's authority to sell. In selling lands for taxes, he is executing a mere naked statutory power, and the rights of the citizen to his property cannot be divested by this kind of sale, unless it appears affirmatively from the form of the collector's deed that all the prerequisites of the statute have been strictly pursued. This is the settled law of this State." *Spurlock v. Allen*, 49 Mo. 178; *Lagroue v. Rains*, 48 Mo. 536; *State ex rel. v. Mantz*, 62 Mo. 258.

This deed substantially pursues the blank form prescribed by the statute; but upon reference to the law which contains and shows what must be done by the law officers in carrying out its provisions, in reference to tax judgments

and sales and deeds, we find that, as far as this record shows, the wrong officer executes the deed; and that the judgment was obtained at a term of the court different from that provided by law. At the time this judgment was obtained, the law fixed the regular terms of the county courts (1 Wag. Stat., p. 442, § 17), on the first Mondays in February, May, August and November. The revenue law, section 182, *supra*, fixed the first Monday in July as the term at which such judgment should be taken, or at " any subsequent regular term." Sec. 188, *supra*. But the notice of application for judgment, in this case, ran to neither of these times, but to the "August adjourned term." 76 Mo. 129. This is not such compliance with the requirements of the statute as the authorities above quoted hold to be necessary. We think, therefore, that the circuit court did not err in excluding the deed. This proceeding is for a purpose. The notice is given so that the owners of the land may have their day in court. It stands in the place of summons in the circuit court. Who would undertake to commence a suit in the circuit court and make the summons returnable to an adjourned term of court? If not permissible in courts of general jurisdiction, it would seem to be improper in courts of limited jurisdiction, which are confined strictly to their statutory power. *State ex rel. v. Shortridge*, 56 Mo. 126; *Saline Co. v. Wilson*, 61 Mo. 237; *Jefferson Co. v. Cowan*, 54 Mo. 234; *Steines v. Franklin Co.*, 48 Mo. 167.

III. The plaintiff in error insists, that by section 221, if the tax purchaser records his deed, "suit must be brought within three years to invalidate the deed." That section provides as follows: "Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of the lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes    *    *    shall be commenced within three years from the time of recording the tax deed, and not thereafter."

This suit, it will be observed, is by the " tax purchaser,"

and against the defendants, who claim to be the owners.

If this position be correct, it would require the party in possession to sue for possession. The defendants being in possession and claiming title, had no occasion to sue. No law can compel one who has possession under claim of right to take legal steps against an outstanding or opposing claim. Such an one has none of his rights assailed, and having all the law can give him, he cannot be called upon to litigate or contest pretended or alleged claims, until he is assailed. If one be ousted of his land, he then must assert his rights by suit, within the time prescribed by law, or forfeit his claim by the lapse of time. If not, the law of limitations presumes that he has abandoned all claim. Such laws can only operate against one who is not already in the enjoyment and dominion of his rights. Statutes of limitation are designed to compel one whose rights are withheld, to assert them within the time prescribed, but can have no effect upon him who has possession. If the tax purchaser, in this case, had possession, then the owner must assert his claim by suit, within the time prescribed by the statute or be forever barred. *Groesbeck v. Seely*, 13 Mich. 330, asserts this doctrine: "In the present case the party asserting a legal claim, against one which he claims to have been illegal, is in possession as a defendant. The other claimant is the actor, and insists that, whether his tax title was legal or worthless originally, it has become good, although the defendant has not been previously ousted and guilty of delay in enforcing his title. If this tax title can be made indefeasible against a title in possession, by mere lapse of time, it might as well have been declared so originally. It would, in either case, be nothing more nor less than depriving one of his property without any legal process, and is simply confiscation by ministerial and not judicial action."

*Taylor v. Miles*, 5 Kansas 512, was a case where the tax purchaser brought ejectment against the original owner in possession, more than two years after his tax deed had been recorded, which was the period of limitation under the

Kansas statute. The court say: "He could not commence an action to recover property that was already in his own possession; and he could not evict any one that was not on his land or in possession thereof, either actively or constructively. He therefore, never had an opportunity to have his day in court."

In considering a statute substantially similar to ours, the court in *Baker v. Kelly*, 11 Minn. 480, say: "If section seven, therefore, applies at all to ejectment, it only limits the time within which such actions may be brought, in the few and exceptional cases, where the claimant under the tax sale, obtains possession without contest, and within one year after the record of the tax deed, denying such remedy in other cases."

IV. The last point insisted on by the plaintiff in error, is that he is entitled to recover on his prior possession.

Prior possession in this case must be adverse possession, because it has been held that his tax deed is void. That is to say, that prior possession, which is sufficient and necessary to maintain ejectment, must be visible, notorious, continued and actual. *Dalton v. Bank*, 54 Mo. 105; *Doan v. Sloan*, 42 Mo. 106. "Wherein, it may be asked, does the actual possession, required in case of prior possession differ, if at all, from the actual possession demanded in adverse possession. We see no ground for drawing any distinction, and think none exists." *Polack v. McGrath*, 32 Cal. 15.

The question of possession was fully presented to the jury by appropriate instructions, and they found for the defendant, and we think they had ample reason to do so. *Crispen v. Hannavan*, 50 Mo. 536. The land was uninclosed, unoccupied prairie, a common grazing ground. Five years after the tax sale, the plaintiff leased it to the witness Marti, for grazing purposes for 1877, with the privilege of two years if he so desired. Marti herded his cattle on it during the summer of 1877, but left it in October, without leaving any *indicia* of possession. In February, 1878, no one being in possession visibly, defendants being the owners, took pos-

session and fenced the whole, and broke and cultivated a part of the land. After they commenced fencing, Marti, the lessee, came upon the land and built a pen about fifty feet square, panels sixteen feet long, with two planks to a panel, and then left, making his appearance no more. These being the facts, the jury found for the defendants, and we hold they were justified in so doing. This did not amount to such prior possession as would entitle the plaintiff to maintain ejectment.

The judgment of the circuit court is affirmed. Martin concurring. Philips, having been of counsel, did not sit in the case.