BURTON v. HUMA et al.

(Circuit Court, D. Colorado. February 19, 1889.)

QUIETING TITLE—RES ADJUDICATA.
    A decree quieting title in plaintiffs in a suit under Code Civil Proc. Colo. § 257, providing that an action may be brought by any person in possession of real property "against any person who claims an estate or interest therein adverse to him for the purpose of determining such adverse claim, estate, or interest," is conclusive against all adverse claims or interests then held by defendants, whether pleaded in defense or not.

In Equity. On plea and exceptions to answer.
Teller & Orahood, for complainant.
Wolcott & Vaile and E. Miles, for defendants.

BREWER, J. This case stands on a plea and exceptions to the answer. The facts, as developed, are these: In 1884 one Rufus Clark was the owner of the real estate in question. He sold and conveyed it to Henry and Loveland for the sum of $70,000, of which $10,000 was paid in cash, and a trust deed given for the balance to two trustees. A few hundred dollars only having been paid upon this balance, the trustees, at the request of Clark, advertised the property for sale, and sold the entire tract to Clark for $76,800. In pursuance of that sale a deed was made to Clark, who subsequently conveyed it to the South Denver Real Estate Company. While the advertisement of the sale was in the names of both trustees, only one attended the sale, and only one executed the deed. Prior to the original conveyance by Clark to Henry and Loveland certain portions of this land had been subdivided into lots and blocks, and the plat thereof recorded in the office of the recorder of deeds, but neither the conveyance from Clark, nor the trust deed, nor the advertisement of sale took any notice of this platting, but described the lands simply by quarter sections and parts thereof. At the time of the sale in pursuance of the direction of Clark by his attorney, the trustee made this announcement:

"I desire to sell this property for the highest possible price it will bring in cash. In order to ascertain the best price obtainable for the whole property I will first offer it in parcels, the subdivided parts in lots and blocks separately, and the rest in tracts of about twenty-two to forty acres each. After the whole property is thus offered, and the aggregate of the highest bids computed, then the whole tract will be offered in one body. If the aggregate of the high-

est bids obtained when offered in lots, blocks, and parcels equals or exceeds the highest bid when offered as a whole, the property will be struck off according to such bids in parcels; otherwise it will be sold as a whole."

In pursuance of this announcement it was so offered in lots, blocks, and parcels, and, on computing the aggregate of the various bids, the amount was $76,798.87. Then it was offered as a whole, and $76,800 offered, and the property struck off to the bidder. Prior to the sale, one McIntosh, who is a party to this bill, and one of the principal stockholders in the real estate company, being desirous of obtaining the land, entered into a written contract with Clark, by which the latter agreed to have the property sold under the trust deed, and if he obtained title thereto at such sale, to convey to the former at a named price. It was also stipulated in this contract that Clark should attend the sale, and make bids in pursuance of instructions from McIntosh. The sale and the deed to Clark were on the 3d of August, 1886. Thereafter, and on the 12th of April, 1887, Henry and Loveland filed a bill in the state court, alleging that the sale and deed were void on the ground that they were made and executed by one trustee, and not by both, and also on the ground of some defects in the advertisement, etc., praying that that deed and all subsequent conveyances be canceled and held for naught, and that upon the payment of the balance due on the original purchase price a conveyance should be made to them. To that complaint the various defendants answered, and also filed a cross-complaint, in which they set out the original sale from Clark, the trust deed, the advertisement, sale, and deed, and subsequent conveyances, and alleged that the proceedings of the complainants were casting a cloud upon their title, and prayed that it might be quieted, and the defendants in the cross-complaint decreed to have no right or claim or interest in or to the property.

The pleadings having all been perfected, the case went to trial, and a decree was entered in which it was found that none of the material allegations of the original bill of complaint were sustained, and that all of the material allegations of the cross-complaint were sustained, and adjudged that the original bill be dismissed for want of equity, and that the title of the cross-complainants be quieted, and forever set at rest as against all claims whatsoever of the complainants, or either of them. This decree was taken to the supreme court of the state for review, and by that tribunal affirmed.[1] Thereafter, on July 16, 1888, this bill was filed, which is called a "bill to redeem," and sets up the facts heretofore stated, except the proceedings in the state court; tenders the balance due on the original purchase price, with interest; and prays a decree for redemption. It sets up a title in complainant, derived from sundry mesne conveyances from Henry and Loveland. It also sets up a title derived by conveyances from the parties who bid for the several lots and parcels at the trustees' sale.

Now, the plea sets up the proceedings in the state court as a bar to all claims which complainant may have derived through his conveyances

[1] Loveland v. Clark, 18 Pac. Rep. 544.

from Henry and Loveland; and the answer, besides being in support of the plea, sets up defenses to the title obtained by the conveyances from the bidders for the lots and parcels. This, I think, presents all the substantial facts in the case. Some technical questions have been argued, but I think it useless to notice them, and proceed to the substantial matters. I have not mentioned all of the conveyances by which titles have been transferred, or the various parties who have interests, but have treated the complainant on the one side and the real estate company on the other as the real parties in interest, for, their rights being settled, all other questions and rights are disposed of. Now, are the proceedings in the state court a bar to this action? It is said by counsel for complainant that the state case proceeded on the theory that the sale and deed were absolutely void, while this accepts the sale as apparently valid, but goes upon the theory that it is voidable, and seeks simply redemption, and that the wrongful and fraudulent contract between Clark and McIntosh was not set forth in the bill of complaint in the state court, or made the basis of relief. Inasmuch as complainant holds under Henry and Loveland, by conveyances since the former case, this action must stand as between the same parties in reference to the same property, and I think it would be difficult, even if no cross-complaint had been filed in the original case, to draw any substantial distinction between the two actions, or avoid holding that the former was a bar to this. The fact that new matter is added in the complaint makes no difference. In the case of *Cromwell* v. *County of Sac*, 94 U. S. 352, the supreme court lays down in very clear language the rule controlling as follows:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy; concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed of which no proof was offered; such as forgery, want of consideration, or payment. If such defenses were not presented in the action and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever."

But I shall not stop to pursue this question, for, when we consider the decree in the former case, it was a decree upon the cross-complaint, and

a decree quieting title. The cross-complaint was properly filed, for the matter set up therein was germane to that presented in the original complaint. The propriety of its presence was unchallenged, and the parties went to trial upon that, and the decree of the lower court was affirmed by the highest court of the state. Now, if a decree in an action quieting title amounts to anything, it must be held that in a case like this it has quieted defendants' title as against all claims growing out of the transactions of the sale. The Colorado Code provides not merely for settling the title, but every title, claim, or interest, and the decree which was rendered quieted the title as against all claims.[1]

It is said in Pomeroy on Remedies, section 369, that the object of this statutory action is the "putting all litigation to rest." In *Green* v. *Glynn*, 71 Ind. 339, the court observes:

"The very object of the action to quiet title is to determine all conflicting claims and to remove all clouds from the title of the complainant. If one having a claim is brought into court by a complaint to quiet title, and fails to assert his claim, he is concluded by the judgment, even though he omitted to assert his real claim. The statute was intended to secure repose, and to settle in one comprehensive action all conflicting claims. * * * If one brought into court, and being not only allowed full opportunity to assert such claim as he may have, but directly challenged to do so, neglects to use this opportunity expressly afforded him, he has no right to again vex the courts or those claiming adversely to him by instituting a new and distinct action against the party who summoned him into court."

In *Farrar* v. *Clark*, 97 Ind. 449, I find this language:

"The question as to the effect of a judgment in an action to quiet title is important but not difficult. If, as has been so often held, the purpose of the action is to determine and quiet title, then it is manifest that the judgment determining and quieting title must be conclusive. The decree quieting title in the appellees was not a mere empty declaration. It was a conclusive adjudication. Title will not be quieted unless the decree can operate, and if it does operate, then it puts at rest the question of title. In a case similar to the present, the court said: ' Of what avail, then, can it be to the plaintiff to have his title quieted in him when, after that is done, he cannot recover possession upon it?' Equity will not grant a relief in form which must be valueless in fact.' * * * The object of the action to quiet title was to settle all claims, and the question of title was the dominating one in that action, and the controlling one in this. It is a mistake to suppose that the object of a suit to quiet title is to settle particular claims. On the contrary, it is, as was in substance said in *Barton* v. *McWhinney*, 85 Ind. 481, an action to quiet the plaintiff's title against all claims of the defendant, whatever they may be. If, then, all claims are included, all claims are necessarily finally adjudicated, and the question of title forever settled."

The Oregon Code is very like the Colorado one, and something of a similar question was presented under that Code to the United States circuit court of that district in *Starr* v. *Stark*, 1 Sawy. 276, and the court disposes of the matter in these words:

---

[1] Code Civil. Proc. § 257. An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest.

·"The plaintiff cannot at his option split it up into many suits with which to harass and weary the defendant. By the final decree in such a suit, the title to the premises as between the parties is determined, and all questions or matters affecting such title are concluded thereby. If either party omits to set forth and prove all the grounds of his right, or his adversary's want of it, he cannot correct his error by bringing another suit upon the portion or fragment of the case omitted. * * * If they failed to bring to the consideration of the court by proper proof or allegation anything material to a correct determination of the controversy for which such suit was given and brought to settle, it was their own fault, and they must abide by the consequences."

In Sedgwick & Wait, on the Trial of Title of Land, it is declared that a ·decree in an action to quiet title is conclusive, and puts all litigation to rest as regards the parties to it, and the titles involved, and in *Reed* v. *Calderwood*, 32 Cal. 111, under a similar statute, the court observes:

"It may be admitted that the plaintiffs were not in strictness entitled to a decree enjoining the defendants from making any further contest on the plaintiff's title, whether judicially or otherwise; still the error must be disregarded, for it cannot affect any substantial right of the party. The decree would have been a bar to subsequent litigation on the same subject-matter if the injunction clause had been omitted, and that clause may be of positive service in preventing the bringing of suits by the defendant which, if brought, would be sure to fail. The defendant, however, is mistaken in supposing that the injunction will preclude him from availing himself of an after-acquired title."

And in *Parrish* v. *Ferris*, 2 Black. 609, the supreme court of the United States observed in reference to the Ohio statute, which is like the one of this state, as follows:

"The statute authorizes any person in possession of real property to institute a suit against any one who claims an estate or interest therein adverse to him, for the purpose of determining such adverse estate or interest. Now, it is quite apparent that the title of the defendant to the lands in question is involved, under this act, and that the determination of the court must be conclusive against him, and all claiming under him, as between the parties. If not, the act is of no effect."

And indeed, if a decree in an action to quiet title does not quiet it, it is difficult to conceive the object or purpose of such an action. It does not seem to me open to question. I have not the slightest doubt that the decree under the cross-complaint in the original action barred all of complainant's claims springing out of the trustee's sale, and passing to him through the conveyances of Loveland and Henry. It follows from this that the plea must be sustained. With reference to the exceptions to the answer, it is unnecessary to notice them in detail; it is enough to say that the bidders at the sale took nothing by their bids, either at law or in equity, and had therefore nothing to· convey to complainant. The method of sale adopted by the trustee was one in frequent use. Its propriety cannot be questioned. Indeed, it may be considered as settled. Many decrees even contain a provision directing such method of sale. I remember the decree in the Wabash foreclosure contained a similar provision, and as there is no suggestion that there was any mistake in the adding up of their several bids, or that the amount bid for the land in gross did not exceed the amount of the several bids, or that the property

was not finally struck off on the single bid, the separate bidders have no claim, either in law or equity. Furthermore, it may well be doubted whether there was any memorandum in respect to their bids, sufficient to sustain them under the statute of frauds. *Eppich* v. *Clifford*, 6 Colo. 493; *Grafton* v. *Cummings*, 99 U. S. 100. As no cause of action appears in respect to this claim of title it is unnecessary to waste any time upon the exceptions to the answer thereto. The order, therefore, will be that the plea be sustained, and the exceptions to the answer overruled.