(April 22, 1916.)

# THE NEW FIRST NATIONAL BANK OF COLUMBUS, OHIO, a Corporation, Plaintiff, v. CITY OF WEISER et al., Defendants.

### [166 Pac. 213.]

MANDATE—CITIES AND VILLAGES—STATUTORY CONSTRUCTION—IMPROVE-
MENT BONDS—LIEN OF BONDHOLDERS—PAYMENT OF INTEREST AND
PRINCIPAL—LIABILITY OF LOT OWNERS.

1. Under the provisions of sec. 2238 of the Political Code and amendments thereto, and the other sections of said Political Code defining the powers of cities and villages, improvement districts may be organized and improvement district bonds issued for the payment of improvements, and it is made the duty of the mayor and council to levy special assessments each year sufficient to redeem the instalments of such bonds maturing next after their issue, and the funds arising from such assessments shall be applied solely to the redemption of the principal and interest on said bonds, and such bonds are made liens upon the property of the abutting property owners, and if any of such property owners pay their assessments, they are entitled to be credited on their account, as shown by the assessment-roll, both for interest and principal, and the city authorities would have no authority under the provisions of said act to divert such money so paid by a property owner to the payment of the interest or principal due from another abutting property owner who failed or neglected to pay his assessments as required by law.

2. When a property owner pays his assessments as provided by said act and the city ordinance, the money arising therefrom must be paid by the city authorities on the interest due on such bonds and on the matured principal, and such property owner is entitled to have his property released from the lien of such bonds to the extent of the payment made, and the money so paid by the property owner cannot be diverted to the payment of the interest or principal due on said bonds from other property owners who fail to pay their assessments.

3. The benefit assessed to each lot or parcel of ground abutting on such improvement is liable for the payment of assessments made against such lot or parcel of ground, and if the city fails or refuses to pay such bonds, or promptly collect any such assess-

ments when due, the owner of such bonds may proceed in his own name to collect such assessments and may foreclose any lien thereon in any court of competent jurisdiction, and is authorized to recover in addition to the amount of said bonds and interest, five per centum, together with costs of such suit, including a reasonable sum for attorney's fees.

4. Said statute gives the bondholder a plain, speedy and adequate remedy at law whereby he can proceed to collect from each property owner the amount due from him on such bonds.

5. Under the provisions of subsec. 12, a lien is created against the property of the abutting owner and the bond owner is authorized to receive, sue for and collect any assessments made against such property through any of the methods provided by law for the collection of assessments for local improvements.

6. Subsec. 4 provides among other things, that the holder of any such bonds shall look only to the fund provided by such assessment for the principal and interest of such bond and gives the bondholder a preference over any mortgage or lien against the land of such abutting owner.

7. It was not intended that the bondholder could require a property owner who had paid his assessments as levied under said law to pay assessments for other abutting owners who are delinquent in the payment of their assessments.

8. Said act also provides that the holder of any such bonds shall have no claim for the payment of the same against the city or village except for the collection of the special assessments made for the improvements for which said bonds are issued, and the bondholder's remedy in case of nonpayment is confined to the enforcement of such assessments. This provision of said law is especially made a part of each bond.

9. The bondholder has no claim against the city on account of the debt created by such bonds, and is given no right as against a land owner who has paid all of his assessments, and the city authorities have no power or right to divert any portion of the principal or interest paid by such taxpayer to the payment of interest and principal owed by a delinquent taxpayer.

10. The bondholder may proceed in the matter as provided by statute, and can either secure his money from the delinquent taxpayer or obtain title to the property owned by such delinquent, free and clear of all encumbrances.

11. The plaintiff in this case has a plain, speedy and adequate remedy at law for the collection of any principal or interest due from any property owner who has failed to pay any assessments

made by the city authorities, and that being true, the peremptory writ of mandate will not issue.

[As to whether a personal liability may be created for an assessment for local improvements, see note in 133 **Am. St.** 929.]

Original proceedings in this court to require the city authorities of the City of Weiser to pay the funds arising from assessments made in a certain improvement district in a certain way. Alternative writ issued and on a hearing such writ quashed and the peremptory writ denied.

C. F. Reddoch, for Plaintiff.

The legislature intended the issuance of negotiable securities, which would permit and allow public improvements. While it is true that the holder of bonds issued under sec. 2238, Rev. Codes, must look to the local improvement fund for the principal and interest represented by his bond, yet there is no doubt but that the legislature intended and contemplated the issuance of a security, which would be marketable and would permit and allow municipal improvements, and if the contention of the city of Weiser and its officials should be sustained, street improvements in the state of Idaho are at an end until the legislature makes some other bonding provision, as a purchaser could not be found for such bonds. (Abbott on Negotiable Securities, sec. 11; Abbott on Public Securities, secs. 101, 117.)

There can be no question but that the legislature intended the interest should be paid as it matured, because if it is only to be paid in partial instalments, no one would buy such a bond.   (*Veatch v. City of Moscow,* 24 Ida. 461, 134 Pac. 551.)

The plaintiff has a legal right to compel the defendant city and its officials to perform this duty, and the only adequate remedy is by writ of mandate.   (*Fremont v. Crippen,* 10 Cal. 211, 70 Am. Dec. 711; *Babcock v. Goodrich,* 47 Cal. 488; *California Pac. R. Co. v. Central Pac. R. Co.,* 47 Cal. 528; *Raisch v. Board of Education,* 81 Cal. 542, 22 Pac. 890; *State v. Murphy,* 19 Nev. 89, 6 Pac. 840; *Coos Bay R. etc. Co. v. Wieder,* 26 Or. 453, 38 Pac. 338; *Yearian v. Spiers,* 4 Utah,

482, 11 Pac. 618; *State v. Kamman,* 151 Ind. 407, 51 N. E. 483.)

The only argument which can be made against the issuance of the writ is that plaintiff has an equitable remedy by foreclosing the lien represented by instalments of the assessments maturing each year, and the authorities are uniform that an equitable remedy is not a bar to a proceeding by *mandamus.* (*State v. Sneed,* 105 Tenn. 711, 58 S. W. 1070; Roberts, Extraordinary Legal Rem., pp. 23, 25, 107; Merrill on Mandamus, sec. 35.)

J. W. Galloway, City Attorney, and Frank Harris, for Defendants, cite no authorities.

SULLIVAN, C. J.—This is an original application to this court by the plaintiff for a writ of mandate against the city of Weiser and its officials, commanding said city and its officials to apply the moneys now available in Local Improvement Districts Nos. 6 and 7, as well as all moneys hereafter to be received in said local district funds, or either thereof, first in the payment of interest upon the bonds of said district, and second, after the payment of interest, apply such funds as are available in either of said districts to the redemption of said improvement bonds in their order, beginning with the lowest number.

Upon said application, an alternative writ of mandate was issued and on the return day thereof the defendants demurred to the petition and also interposed a motion to quash.

The facts were not disputed and the question arose over the law applicable to the facts and involves the proper construction of sec. 2238, Rev. Codes, as amended by chap. 81, Laws 1911, p. 266, and especially subds. 11, 12 and 14 of subd. 6 of said section, relating to the issuance, payment of interest upon, and the redemption of bonds issued under the provisions of said section.

It is contended by counsel for plaintiff that a careful analysis of the provisions of said sec. 2238, and especially those provisions relating to the issuance, payment of interest upon

and redemption of such bonds, will disclose the fact that to a certain extent they are obscure and uncertain, and when the same are compared with other improvement bond statutes of the state, that the legislative intent is manifest to the effect that the money collected each year from the assessment of the property liable to taxation in such districts, in case there is not sufficient collected to pay both principal and interest due in that year, that the interest must first be paid and the balance applied on the principal of said bonds in the order in which they become due.

This contention of counsel for plaintiff we do not think is consistent with the provisions of said law. Among the many provisions contained in said sec. 2238, as amended, we find the following in paragraphs 11, 12 and 14 of subd. 6:

Subd. 11: "Whenever the Mayor, or Council, or Trustees of any City or Village shall . . . . cause any street or avenue, or alley in such city or village to be sidewalked, graded, curbed, etc., . . . . the cost and expense of which is chargeable to the abutting, adjoining, contiguous or approximate property, they may, in their discretion, provide for the payment of the costs and expenses thereof by instalments instead of levying the entire tax or special assessments for such costs at one time, and for such instalments, they may issue, in the name of such city or village, improvement bonds of the district, . . . . payable in instalments of equal amounts each year, none of which bonds nor any of the instalments shall run longer than ten (10) years, nor bear interest exceeding seven (7) per cent per annum, number of years for said bonds to run and the rate of the interest thereon, within said limits, in each instance to be determined by the City Council or Village Trustees.

" . . . . Such bonds shall not be issued in amount in excess of the contract price or cost of the work of improvement, except that the instalment coupons shall include the interest on such instalments to the maturity thereof. The bonds shall be of such denomination as the mayor or trustees shall deem proper.

"When district bonds are issued under this section . . . . the Mayor and Council . . . . shall levy special assessments each year sufficient to redeem the instalments of such bonds next thereafter maturing, but in computing the amount of special assessments to be levied against each piece of property liable therefor, interest thereon not exceeding seven (7) per cent per annum from the date of the issuance of said bonds until the maturity of the instalments of bonds next thereafter maturing . . . . Such bonds shall be numbered from one (1) upward, consecutively, . . . . Each bond shall provide that the principal sum therein named and the interest thereon shall be payable out of the local improvement fund created for the payment of the cost and expense of such improvement and not otherwise. The owner of any piece of property liable for any special assessments may redeem his property from such liability, . . . . after the issuance of the bonds, by paying all the instalments of the assessments which have been levied and also the amount of unlevied instalments with interest on the latter at the rate of seven (7) per cent per annum from the date of the issuance of the rate bonds to the time of maturity of the last instalment . . . . all sums so paid [whether before or after the issuance of the bonds] shall be applied solely to the payment of such improvements or the redemption of the bonds issued therefor.

"When any piece of property has been redeemed from liability for the costs of any improvements as herein provided, such property shall not thereafter be liable for further special assessments for the cost of such improvement except as hereinafter provided.

" . . . . The funds arising by such assessment shall be applied solely towards the redemption of the bonds."

Subd. 12: " . . . . And such bonds shall be equal liens upon the property for the assessments represented by such bonds without priority of one over another to the extent of the several assessments against the several lots and parcels of land. . . . . "

Subd. 14: " . . . . Any city whose charter provides for the issuance of bonds for local improvements, payable only from

the proceeds of special assessments, is hereby authorized to issue such bonds in the manner and with the effect provided in this section, and the holder of any such bond shall look only to the fund provided by such assessment for the principal or interest of such bond.''

Under said act the city is presumed to have its assessment-roll made up as provided by subsection 5 of sec. 2238, and in fact it is conceded that the city has done so and charged each property owner with the cost of the improvement abutting his property. By the provisions of subsection 11, the council is required to levy each year special assessments sufficient to redeem the instalments of such bonds next thereafter maturing, but in computing the amount of special assessments to be levied against each piece of property liable therefor, interest thereon not exceeding seven per cent per annum from the date of the issuance of said bonds until the maturity of the instalments next thereafter maturing, and it is provided that such assessments shall be made upon the property chargeable for the costs of such improvements, respectively. And it is provided that if any of the property owners pay their special assessments, they are entitled to be credited on their accounts as shown by the roll, both for interest and principal, and the roll should show such payments. The amounts having been thus charged to each piece of abutting property and paid by each property owner for the purpose of paying off his liability under such assessments, both principal and interest, the city authorities would have no authority under said act to divert the money so paid by the property owner to the payment of interest or principal due from abutting property owners who failed or neglected to pay their assessments as required by law. We do not think the city treasurer, under said act, would have the authority to divert the funds thus collected to the payment of the interest due from a delinquent. When a property owner pays his assessment as provided by said act and the city ordinance, the money arising therefrom is apportioned to the improvement district fund and from that fund the money is paid over to the holders of the bond for the purpose of paying interest on unpaid instal-

ments, and the payment of the matured bonds themselves, as far as the money collected will go. Neither the statute nor the ordinance of the city authorizes any other method of distributing the funds than was used by the city treasurer.

The benefit assessed to each lot or parcel of ground abutting on such improvement is made liable for the payment of such assessment, and if the city shall fail, neglect or refuse to pay such bonds, or promptly collect any such assessments when due, the owner of any such bonds may proceed in his own name to collect such assessments and foreclose any lien thereon in any court of competent jurisdiction, and shall recover in addition to the amount of said bonds and interest thereon, five per centum, together with the costs of such suit, including a reasonable sum for attorneys' fees. (Sess. Laws 1911, p. 274.)

Thus the bondholder is given a plain, speedy and adequate remedy at law whereby he may proceed to collect from each property owner the amount due from him. This is certainly a plain, adequate remedy for the collection of any amount due from any delinquent or any lot subject to said assessment.

Under the provisions of subsec. 12, a lien is created against the property of the owner and the owner of the bond is authorized to receive, sue for and collect such assessments embraced in any such bond, or through any of the methods provided by law for the collection of assessments for local improvements.

Subsec. 4, among other things, provides that the holder of any such bonds shall look only to the fund provided by such assessment for the principal or interest of such bond. And it is also provided that "whenever any expense or cost of work shall have been assessed on any land, the amount of such expense shall take precedence over all other liens, and which may be foreclosed in accordance with the provisions of the Code of Civil Procedure." The bondholder is thus given a preference over any mortgagee or lienholder against the land of each property owner. It was not intended that the bondholder could require a property owner who has paid his assess-

ment as levied to pay assessments for others who are delinquent or who have neglected to pay their assessments.

Said section also provides that the holder of any bond issued under the authority of said act shall have no claim therefor against the city or village by which the same is issued, in any event except for the collection of the special assessments made for the improvement for which said bond was issued, but this remedy, in case of nonpayment, shall be confined to the enforcement of such assessments; and it is provided that a copy of this subdivision of this section shall be plainly written or engraved upon the face of each bond issued under said act.

The bondholder can have no claim against the city on account of the debt created by the bond, and the bondholder is given no right as against a taxpayer who has paid all of his assessments. Such taxpayer has cleared himself from all liability on account of the bond issue, or in proportion to the time he has paid; that is to say, if he has paid up his assessments for three years, he has discharged that proportional part of his share of the bonded indebtedness, and the city authorities would have no right to divert any portion of the principal and interest paid by such taxpayer to the payment of the interest and principal on such bonds owed by a delinquent taxpayer.

It is not claimed in this proceeding that the city authorities have failed or neglected to make proper levies at the proper time, or that its officers have not in proper season certified to the tax collector the list of taxpayers against whom tax levies have been made on account of said bonded indebtedness and interest, and if all such assessments have not been paid, it is not the fault of the city but of the individuals who have let their taxes go delinquent. The city has no method of getting the money out of these delinquents except in the due and ordinary course of law. If the bondholder sees fit to proceed in the manner provided by statute, he can either secure his money from the delinquent taxpayer or obtain title to the property of such delinquent free and clear of all encumbrances.

The clear intent and meaning of said statute is to enable each property owner whose property is to be benefited by such public improvements to borrow sufficient money for that purpose on the strength and credit of his individual holdings to be so improved, and that no property owner stands as security for any other property owner.

The remedy of the bondholder in case a property owner fails to make payment of the taxes assessed against his property is not against the city nor the improvement district nor against a person who has paid the sum due from him, but against the property of the delinquent.

Under said act the plaintiff has a plain, speedy and adequate remedy at law for the collection of any interest or principal due from any property owner who has failed to pay the assessments made by the city authorities, and that being true, the writ of mandate will not issue.    The bondholder must pursue the remedy provided by statute.

The alternative writ heretofore issued will be quashed and the peremptory writ denied, with costs in favor of the defendants.

Budge and Morgan, JJ., concur.


(June 30, 1917.)

ON REHEARING.

PER CURIAM.—In this case a rehearing was granted and the case has been argued and submitted upon rehearing.

Upon further consideration of the case on rehearing the court adheres to the conclusions reached upon the former hearing.

The judgment heretofore announced will remain as the judgment of this court.