Argued March 29, reversed July 11, 1928.

J. E. BEEZLEY ET AL. *v.* CITY OF ASTORIA.

(269 Pac. 216.)

For appellant there was a brief over the name of *Mr. H. K. Zimmerman,* with an oral argument by *Mr. James L. Hope.*

For respondent there was a brief over the name of *Messrs. Norblad & Hesse,* with an oral argument by *Mr. Frank C. Hesse.*

ROSSMAN, J.—■ It must be apparent that when the City failed to answer the complaint filed by the plaintiffs to quiet their titles, the City admitted only that it had no interest or estate in the plaintiffs' properties. Section 516, Or. L. provides:

"Any person claiming an interest or estate in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates."

In *Burton* v. *Huma*, 37 Fed. 738, a discussion for the purpose of suits to quiet title will be found; for a discussion of what estates and claims may be reached by such a suit, see Pomeroy's Eq. Juris. (2 ed.), p. 2161. When the City failed to answer the previous suit it admitted that its assessment liens were invalid and the court's decree established this as a fact. But the admission and the decree did not necessarily go any further.

■ The City, however, contends that when it was deprived of its assessment liens by the decree in the previous suit, there remained undisturbed the duty of this property to pay for the benefits which accrued to it by virtue of the improvements of Niagara Avenue and that this duty under the re-assessment clause of the city charter could be converted into an enforceable lien. Before disposing of this contention it may be helpful to briefly review the basis upon which is founded the power to assess and reassess properties. The theory upon which such assessments are upheld is that property which is so peculiarly situated as regards the expenditure of the funds to be raised by the assessment that it will be expressly benefited through enhancement of value, ought to pay an amount towards the costs of the construction equal to the benefits received. This view finds expression in several of our decisions, especially in *King* v. *Portland*, 38 Or. 402 (63 Pac. 2, 55 L. R. A. 812). This represents also the general view: Page and Jones, Taxation by Assessment, § 11. The benefit thus conferred upon the property in the district constitutes the foundation of the power of assessment, and it creates a primitive type of liability which is converted into an enforceable form

when the City makes an assessment under its charter provisions.

■ While the courts have placed a liberal meaning upon the words "claim" and "interest" when found in such statutes (*Clark* v. *Darlington*, 7 S. D. 148 (63 N. W. 771, 58 Am. St. Rep. 835); *Bogert* v. *City of Elizabeth*, 27 N. J. Eq. 568; *Rhea* v. *Dick*, 34 Ohio St. 420; Pomeroy's Eq. Juris. (2 ed.), p. 2161), we know of none so inclusive that it would include this quiescent duty which required legislative action before it could be converted into a potent claim. The property's duty constituted the foundation for valid legislation. But, without it, the duty was not a legal liability; this was the conception developed in *Brown* v. *Silverton*, 97 Or. 441 (190 Pac. 971). Hence, we do not believe that this moral duty constituted a claim, interest or estate in the plaintiff's properties which the City was compelled to set forth lest it be swept away by a default decree.

■ In order to more adequately protect the City and to assure ultimate payment of the liability, the assessment places the charge in the form of a lien against the property. It follows from the foregoing that if the assessment proceedings before the city council and the municipal administrative bodies failed to mature into valid assessment liens, through failure to observe the rules of procedure, the debt was not extinguished. The only result was that the contemplated charge failed to take upon itself the form of an enforceable debt. Mr. Justice WOLVERTON, with his usual clearness, expressed this conception in the following language in *Thomas* v. *Portland*, 40 Or. 50 (66 Pac. 439):

"The rationale upon which such curative legislation proceeds is that there has been a futile attempt

to levy an assessment, where the parties affected are in justice and in equity bound to contribute to the public demand, and that they ought not to be permitted to escape the burden by reason of some oversight or nonobservance of the prescribed mode of proceeding in the first instance, where the irregularities do not extend to an act or omission that the legislature is without power to authorize primarily. In all such cases the legislature may prescribe a new remedy, so as to require payment, when justice and equity demand it. As was said by Mr. Chief Justice DIXON in *Mills* v. *Charleton,* 29 Wis. 400 (9 Am. Rep. 578): 'The taxing power, when acting within its legislative sphere and unrestrained by positive constitutional provision, is a far-reaching and unlimited power, which knows no stopping place nor moderation of force until it has accomplished the purpose for which it exists, namely, the actual enforcement and collection of the tax. It moves constantly forward to its object until that is accomplished, and, if turned aside by any obstacles or impediments, may return again and again to the same tax or assessment, until, the way being clear, the tax is paid or the assessment collected.' "

And we find in *Duniway* v. *Portland,* 47 Or. 103 (81 Pac. 945):

" * * The purpose of the act is manifest from its reading. It proceeds upon the assumption that assessments for benefits received by reason of local public improvements having been made are liable to fail on account of some irregularity in the procedure or some nonobservance of jurisdictional provisions in the charter, and is designated to supply a curative procedure to supplement the preceding one that has failed. It awards a new and supplementary remedy for impressing upon the abutting property a lien for the cost of the special benefits, not to exceed the original cost of the improvement, because of the failure in the first instance to carry the undertaking to a successful termination. In order to set this

statute or charter provision in motion, there must have been an actual attempt in good faith under the regular procedure to make the improvement, and to have the cost thereof assessed against the abutting property, resulting in a failure through some non-observance of charter provisions, by oversight or mistake, which proceeding must also have been annulled by a court of competent jurisdiction by reason of such irregularity or irregularities, or the common council must have been in doubt as to its validity. These things are conditions precedent to invoking the aid of the provision for the new assessment or reassessment. These latter become, therefore, supplementary to the ordinary or prior regulations, whether under this or the preceding charter of 1898, for making the improvement. They are designed to take up the new assessment or reassessment where the old has failed, and to carry to a successful termination that which has been declared or considered a nullity, thus correcting and validating the whole.

"Statutes of similar purpose are not without precedent, and are founded in justice and equity. They afford an adequate remedy for the enforcement of payment of the costs of local improvements against persons who have been peculiarly benefited thereby, through the enhancement of the value of their property and the rendering of it more accessible and useful, and who ought, therefore, in morals, and public justice, to bear such burden to the extent to the benefits received, if necessary; otherwise, they will escape, although they have profited materially, and perhaps largely by the venture of which they complain. The remedy is not for a collection of the old assessment as was that afforded by section 156 of the old charter, but for a reassessment of benefits derived from the failed improvement, not failed because not made, but failed because of an irregularity in the procedure for impressing the lien for the costs of the benefits, and a collection of such reassessment."

■ The only fact, then which could rid the plaintiff's property from the reassessment charges, would be, for instance, the failure of the property to derive a benefit from the improvement. If this fact was established in the first suit, the City cannot compel the plaintiffs to establish it once more in the present suit. The decree in the first would estop the City from its reassertion. Hence the plaintiffs are in the position where they rely upon the decree in the first suit as an adjudication that their property received no benefit from the improvement of Niagara Avenue. If the decree in the first suit has that effect, it must have come from the admissions arising from the City's failure to answer the complaint and placed in jural form by the court's decree. Let us address ourselves to this inquiry. In proceeding it will be well to take notice of the fact that the present suit is aimed at a different demand than constituted the subject matter of the first suit; and we should bear in mind that judgments can neither create, nor destroy facts: they are merely a method of reposing evidence of facts in a permanent form. Since the subject matter of this suit is a group of liens arising out of a clause of the charter different from that which gave origin to the first group, it is essential to the plaintiffs' suit that the failure of the improvement at Niagara Avenue to confer a benefit upon the properties of the plaintiffs was admitted by the City as a necessary consequence of its default; otherwise the present complaint fails to state a cause of suit. The principles of law which enable us to make this assertion have been many times reiterated by this and other courts. Thus in *LaFollett* v. *Mitchell*, 42 Or. 465 (69 Pac. 916, 95 Am. St. Rep. 780), this court said:

"But there is a difference, sometimes overlooked, between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or demand. In the former case the judgment, if upon the merits, is an absolute bar, and concludes the parties and their privies, not only as to every matter that was actually litigated, but as to any other that might have been litigated. Where, however, the action, although between the same parties, is upon a different claim or demand, the judgment in the prior action operates as a bar or estoppel only as to those matters directly in issue, and not those collaterally litigated."

In *Heilner* v. *Smith,* 49 Or. 14 (88 Pac. 299), this court said:

"But, to render a judgment available as a bar to a second action against the same parties upon a different claim or demand, it is essential that the issue in the second action was a material issue in the first and necessarily determined by the judgment therein."

In *Roots* v. *Boring Junction Lum. Co.,* 50 Or. 298, (92 Pac. 811, 94 Pac. 182), this court said:

"But a judgment in one action is a bar or an estoppel in another action between the same parties upon a different claim or demand, only as to the point actually litigated and determined, and does not extend to questions which might have arisen and been litigated."

In *Farmers & Fruit Growers' Bank* v. *Davis,* 93 Or. 655 (184 Pac. 275), the court said:

"The law applicable is stated in substance as follows: While the doctrine of the effect of a judgment as an estoppel in subsequent action is limited to matters involved in the litigation, it is generally held to be equally applicable whether the point decided is, of itself, the ultimate vital point, or only incidental, if

still necessary to the decision of that point, and a judgment in a prior suit is deemed final and conclusive in subsequent litigation between the parties, or their privies, as to those matters necessarily determined or implied in reaching the final judgment, although no specific finding may have been made in reference thereto, and even though it was not raised as an issue by the pleadings in the former action. If the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considered as having settled that matter as to all future actions between the parties or their privies, and if a judgment necessarily presupposes certain premises, they are as conclusive as the judgment itself, for the judgment is an adjudication on all matters which are essential to support it."

The same rule was well expressed in language frequently quoted by Mr. Justice FIELD in *Russell* v. *Place*, 94 U. S. 606 (24 L. Ed. 214):

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record

leaves the matter in doubt, such evidence is admissible.''

In *Fahey* v. *Esterley Machine Co.*, 3 N. D. 220 (55 N. W. 580, 44 Am. St. Rep. 554), Mr. Justice CORLISS stated the rule thus:

''The least uncertainty as to what was in fact determined in the suit before the justice of the peace is fatal to the use of the judgment as an estoppel on the question of breach of warranty and rescission. This uncertainty created by the record of the proceedings before the justice is not in any manner cleared up by allegations in the answer that the question was in fact determined by the justice against the defendant therein, the plaintiff in the case at bar. 'According to Coke an estoppel must be certain to every intent; and, if upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence. It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty upon this head on this record— as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed without indicating which of them was thus litigated, and upon which the judgment was rendered—the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined.' ''

In *Harris* v. *Mason*, 120 Tenn. 668 (115 S. W. 1146, 25 L. R. A. (N. S.) 1011, the rule is applied in a manner

that is very instructive: the decision also reviews a large number of the authorities. *Hudson* v. *Remington Paper Co.*, 71 Kan. 300 (80 Pac. 568, 6 Ann. Cas. 103), is well annotated in the latter Reporter. See, also, *Union Central Life Ins. Co.* v. *Drake,* 214 Fed. 536; Freeman on Judgments (5 ed.), § 769a and 15 R. C. L., Judgments, § 450. Since the original assessment may have failed for some reason other than those which are essential to defeat the reassessment, we are not in a position to say that the City is estopped in its reassessment.

■ It will be observed that the complaint nowhere alleges that the former decree adjudicated that the improvement of Niagara Avenue failed to confer a benefit upon plaintiffs' properties. Yet in the absence of such an allegation this court cannot presume that the previous decree had such effect: 34 C. J., Judgments, § 1516; Freeman on Judgments (5 ed.), § 769; *Heatherly* v. *Hadley,* 2 Or. 269. Since the essential fact was not alleged and cannot be presumed, the complaint was defective in its absence.

■ As will be observed from Section 516, Or. L., previously quoted, the primary purpose of a suit to quiet title is not to extinguish a debt upon which a lien or mortgage is founded, which constitutes the cloud, but is to rid the plaintiff of the cloud; the debt may become adjudicated but its extinguishment is not the primary purpose. Indeed, the debt may remain after the cloud has been removed, due to the fact that it was a valid and just obligation, although the lien or mortgage was unenforceable. Hence we cannot say that the equitable debt chargeable against the plaintiffs' premises was necessarily adjudicated when the city suffered the decree to be entered. It is perhaps needless to cite authorities to the effect that

the adjudication of a lien against the claimant does not extinguish the debt secured by it. We have read, however, the following cases: *Redd* v. *Todd,* 209 Ala. 56 (95 So. 276); *Geary* v. *Bangs,* 138 Ill. 77 (27 N. E. 462); *Lauder* v. *Arnold,* 65 Me. 26; *O'Kane* v. *Murray,* 26 Pa. Dist. 1075; *Bandy* v. *Cates,* 44 Tex. Civ. App. 38 (97 S. W. 710).

■ The charge that the ordinance was wrongfully and wickedly enacted for the purpose of harassing the plaintiffs does not constitute a proper field for judicial inquiry, for the courts will not inquire into the motives of the legislative branch of the government: 36 Cyc. 973.

■ ■ The allegations that the enactment of the reassessment ordinance was unlawful, and that the actions of the administrative officials in regard thereto were likewise unlawful, will not avail the plaintiffs anything. Such allegations constitute mere conclusions of law; the complaint, however, sets forth precisely what was done and hence we may safely disregard the pleader's conclusions. It is also claimed that since only a portion of those who own property within the district appeared as plaintiffs in the prior suit, the City could not make a reassessment. The plaintiffs contend that the reassessment clause of the Astoria charter contemplates that a reassessment can take place only when an entire assessment is declared void. In their briefs they rely upon *State, Winkler et al., Pros.,* v. *West Hoboken,* 37 N. J. Law, 406 and fortify their citation with the argument that otherwise the remaining properties would be subject to a double assessment. They contend that *State, Winkler et al., Pros.,* v. *West Hoboken, supra,* is authority for the fact that when the charter speaks of an assessment failing, it means

that the assessment must fail as an entirety. We have, however, read *Pardee Works* v. *Amboy*, 59 N. J. Law, 446 (36 Atl. 666), *State ex rel. Gotzian* v. *District Court*, 77 Minn. 248 (79 N. W: 971), *In re West ·Lake Ave.*, 40 Wash. 144 (82 Pac. 279), and *Johnson* v. *Seattle*, 53 Wash. 564 (102 Pac. 448), and conclude that the City was warranted in reassessing the properties of the plaintiffs when the original assessment failed as to them.

It follows from the foregoing that the complaint fails to state a cause of suit and that the lower court erred when it failed to sustain the demurrer thereto.

Its decree will therefore be reversed, with costs to neither party.                                       REVERSED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.