## UNITED STATES v. JOHN K. & CATHER-INE S. MULLEN BENEV. CORPORATION.*

### No. 6867.

Circuit Court of Appeals, Ninth Circuit.
Jan. 23, 1933.

See, also (D. C.) 40 F.(2d) 937.

H. E. Ray, U. S. Atty., and W. H. Langroise, Sam S. Griffin, and Ralph R. Breshears, Asst. U. S. Attys., all of Boise, Idaho, and B. E. Stoutemyer, Dist. Counsel, and Spencer L. Baird, Bureau of Reclamation, both of Portland, Or., for the United States.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

This action was brought under the provisions of the Tucker Act by the owner of certain bonds issued to cover the cost of sewers and disposal works and cement walks within certain assessment districts within the city (formerly village) of American Falls, Idaho. This action was consolidated on appeal with United States v. J. K. Mullen Inv. Co. (C. C. A.) 63 F.(2d) 56, involving bonds of improvement district No. 9. We will deal with the latter case in a separate opinion because of a difference in the pleadings, but will include herein a statement of some of the facts applicable to improvement district No. 9.

The land formerly occupied by the populated portion of the village of American Falls is now within the flooded area above the American Falls dam constructed by the United States across Snake river to empound waters for an irrigation project of the Reclamation Service. The people of the village moved to higher ground above the submerged area and within the corporate limits of the

*Rehearing denied March 21, 1933.

village, taking with them the buildings which had been constructed upon their respective lots which they had reserved in selling their land to the United States.

The action is brought upon the theory that the United States government appropriated the property of the appellee without compensation by reason of the inclusion within the flooded area above the American Falls dam of lands which were liable under the laws of Idaho for assessment for the payment of the improvements for which the bonds in question were issued. For sewerage assessment district No. 1 bonds for $24,000 were issued. The bonds were of $1,000 each, bearing 7 per cent. per annum payable semi-annually. The principal of the bonds by their terms was payable "on or before July 15, 1925." The bonds also provided that: "this bond is redeemable by said village on any interest payment date upon call of the treasurer of said village, made prior thereto by publication for thirty days in the official newspaper, following the delinquency of any installment of the assessment." The bonds also contain a warranty:

" * * * That the *total costs and expenses of said improvements have been* duly levied and assessed as special assessments for sewerage improvements upon all of the lands, lots, and pieces and parcels of land in said local sewerage Improvement District No. 1, *separately* and in addition to all other taxes, and said special assessments are a lien upon said lands, lots, and pieces and parcels of land, and take precedence of all other liens; that due provision *has been made for the collection of said special assessments* and for the levy and collection of a direct annual tax, sufficient to pay the interest accruing hereon promptly when and as the same falls due and also to discharge the *principal hereof at maturity.*" The bonds further provide, in the language of the statute authorizing their issuance (section 1, subd. 15, c. 80, Session Laws of Idaho 1911), that: "The holder of any bond issued under the authority of this chapter shall have no claim therefor against the city, town or village by which the same is issued in any event, except for the collection of the special assessment made, for the work of improvement for which said bond was issued, but this remedy, in case of non-payment, shall be confined to the enforcement of such assessment."

The plaintiff alleges that assessments were duly levied and that "an assessment roll containing the names of the owners, description of the property in separate parcels, and the amount of the assessment thereon against said parcels of property was duly certified to and filed." That later, by ordinance, the assessment roll was confirmed, "providing for the payment of such assessments in ten equal installments, with interest thereon at the rate of seven per cent per annum." It is alleged that the ordinance (No. 69) providing for the issuance of the bonds, "prescribed the form and date of the bonds, the time of payment thereof, and provided for the levying and collection of special assessments which were then calculated as sufficient to pay the principal and interest of said bonds in accordance with their tenor and effects, but that the levies and assessments so made, through mistake or inadvertence, were not in fact sufficient to pay the principal and interest on said bonds as the same became due and payable, according to their terms and provisions, or at all." Plaintiff alleges that it purchased and owns four of said bonds of the par value of $4,000 upon which the interest has been paid to April 28, 1927, and that the principal is unpaid. Similarly the plaintiff alleges the formation of local sewerage district No. 2, the issuance of bonds for $7,-150, fourteen bonds of the par value of $500, and one of $150, the purchase of four of said bonds by the plaintiff, that the interest thereon has been paid to October 25, 1929, and that $198.69 and no more has been paid on the principal. The complaint similarly alleges the issuance of bonds of local improvement district No. 8 for cement walks. There were forty-three bonds of $500 each payable on or before September 1, 1916, bearing 7 per cent. interest, of which plaintiff owns six bonds upon which the interest has been paid to March 18, 1928, but no part of the principal has been paid. It is alleged by plaintiff that owing to the insufficiency of the original assessment of benefits the city authorities by Ordinances 122, 123, and 124 provided "for a re-assessment of benefits upon all taxable property in said Districts 1, 2 and 8, respectively, and directing the committee of streets, together with the city engineer, to make and file a re-assessment roll of the taxable real property within the boundaries of each of said districts, and providing for the re-assessing the cost thereof against all taxable real property within said three respective districts and providing for the payment thereof; that in accordance with the provisions of said three ordinances, re-assessment rolls were made out, certified to and filed by the proper village officials, and notices of the filing of said rolls were given in the manner provided by statute." Plaintiff

prays for a judgment for the unpaid amount of the principal of the bonds it owns, with interest from the dates above specified as the dates to which interest had been paid.

■ The foundation of the plaintiff's claim is that the lands within the several assessment districts involved were subjected to a lien for payment of these bonds and that the appropriation of the lands by the United States has rendered it impossible to realize upon the lien, and that therefore there is an implied obligation on the part of the United States to compensate for the property of the bondholder thus appropriated. At the outset it should be stated that the assessments of benefits made for the payment of the bonds prior to the time the lands were acquired by the government, referred to in the bonds, were duly paid, either by the owners of the land who sold the property to the government or from funds furnished by the government to clear up the title at the time of the purchase. It should be noted here that although the bond on its face purports to be an agreement on the part of the village to pay a certain amount on or before a certain date with interest at 7 per cent., the bond expressly states that the village is not under obligation to pay any part of this amount, nor is there an express or implied agreement by any property owner to pay any part of the amount. It is to be paid from certain assessment of benefits made liens on the several lots and parcels of land within the district and not otherwise. These assessments are spread over a period of ten years, payable in equal annual installments with interest (simple) on the deferred payments to be enforced when delinquent by foreclosure. The bondholder is relegated to a fund derived from the collection of these assessments so levied to pay his bond and in effect agrees that the amount so realized limits his right of recovery. See Bosworth v. Anderson, 47 Idaho, 497, 280 P. 227, 65 A. L. R. 1372; Moore v. City of Nampa, 276 U. S. 536, 48 S. Ct. 340, 72 L. Ed. 688. Reassessments, when authorized, are made for the purpose of correcting errors in fact and in law (sections 4024, 4141, I. C. S.), and not errors in judgment in the previous or original assessment. Section 4024, I. C. S. See Lucas v. City of Nampa, 41 Idaho, 35, 238 P. 288. It is claimed, however, that although the assessments levied against the lands in the district had all been paid, the land was nevertheless subject to a contingent liability for a special reassessment under the provisions of section 4024 (see to same effect as to sewers, section 4141, I. C. S.) of the Idaho Compiled Statutes, 1919, as follows: "Whenever, for any cause, mistake or inadvertence the amount assessed shall not be sufficient to pay the cost of the improvement made and enjoyed by owners of property in the local assessment district where the same is made, it shall be lawful, and the city council or trustees or other authorized board or body is hereby directed and authorized to make reassessments on all the property in said local assessment district sufficient to pay for such improvement, such reassessment to be made and collected in accordance with the provisions of the law or ordinance existing at the time of its levy."

The supplementary reassessments made by the city council of the city of American Falls in the year 1930 were made long after the government had purchased and taken possession of the lands within the several assessment districts here involved. It is contended by the appellee that these assessments are void and that its rights are and must be predicated upon the confiscation of its property by the United States in lieu of the methods of enforcement of the liens of the special assessments provided for by the statute of Idaho. We will not at the present moment consider whether or not such position is well taken if the bonds as distinguished from the assessments are a lien but will first examine the foundation of the appellee's right, namely, the question as to whether or not the bonds are a lien upon all or any of the property in the district.

The trial judge ruled in favor of the appellee upon the general propositions involved and rendered judgment for the plaintiff but deducted from the total amount claimed certain payments to the city of American Falls which in its opinion should have been applied upon the bonds to reduce the amount due thereon. The general scheme for street improvements and the construction of sewers under the Idaho statutes relied upon by the plaintiff provided for a resolution of intention on the part of the legislative authority of the city declaring its intention to go forward with the work and for the formation of a district with the boundaries to be defined in the resolution of intention to be subjected to assessment for the work; for the levy of an assessment upon the several pieces of property within the district to pay the cost of the work in proportion to the benefits derived by the respective lots and in accordance with their frontage in the district; for an opportunity to appeal from

the assessment roll made out by the city engineer or other proper authority of such municipality (section 4008, I. C. S.) to the legislative body of the city (section 4010, I. C. S.), and in the event of an adverse decision by such body to the District Court of the state and county (section 4011, I. C. S.), and from that court to the Supreme Court (section 4012, I. C. S.). According to the statute the District Court can redetermine the amount of assessment upon the property of those property owners who take the appeal, in accordance with the principles stated in the statute. In the event that the cost of the improvement is such as to make it desirable that the *cost of improvement* should be collected in installments the statute provides for the issuance of bonds to cover the cost of the improvement to bear interest at a rate not to exceed 7 per cent., and for the spreading of the payment of the principal over a period not to exceed ten years in equal annual installments, as determined by the legislative body of the city.

It is apparently contemplated that in the event of the issuance of bonds an assessment roll shall nevertheless be made up at the outset covering the full amount of the cost of the improvement and interest, as was done in this case. New First Nat. Bank v. City of Weiser, 30 Idaho, 15, 21, 166 P. 213. The annual installment of the principal of each separate assessment is to be extended upon the tax roll each year in amounts sufficient to pay the annual installment or percentage of the entire bond issue for that year plus the interest to accrue upon the bonds due in the succeeding year. The bonds are not declared to be a general lien upon all the property within the improvement district. On the contrary, each separate piece of property in the district is subject to a lien for its own assessment and is not made liable for the assessment upon any other piece of property or for amounts in default because of the nonpayment of liens upon other pieces of property. New First. Nat. Bank v. City of Weiser, supra.

Section 4007, Idaho Compiled Statutes 1919, declares that when the assessment is made it shall constitute a lien upon the property, as follows: "Whenever any expense or cost of work shall have been assessed on any land the amount of said expenses shall become a lien upon said lands, which shall take precedence of all other liens, and which may be foreclosed in accordance with the provisions of the Code of Civil Procedure."

It is also provided in section 4007 that in case suit is brought to enforce the lien that "where the court trying the same shall be satisfied that the work has been done or material furnished, which, according to the true intent of this article, would be properly chargeable upon the lots or lands through or by which the street, alley or highway improved or repaired may pass, a recovery shall be permitted, or a charge enforced to the extent of the proper proportion of the value of the work or material which would be chargeable on such lot or land notwithstanding any informalities, irregularities or defects in any of the proceedings of such municipal corporation or any of its officers."

No provision of the statute has been called to our attention, nor have we found one, which specifically provides that the bonds shall be a lien upon the property within the assessment district. Indeed, such a declaration would be wholly inconsistent with the theory upon which the assessments for the cost and improvement are spread upon the assessment roll of the city and later extended on the tax rolls of the county, that theory being that each separate lot and parcel of land is liable for its proportion of the cost of the improvement and for no other portion thereof, and that the portion due from each lot must be ascertained in the first instance by the proper city authorities and in the case of appeal by the District or Supreme Court, as the case may be, and that when the amount is thus fixed that amount, and that amount only, constitutes a lien upon the particular lot which can be and is discharged by the payment of that amount by the owner of the property or by foreclosure. Section 4019, I. C. S. 1919. This is clearly laid down by the Supreme Court of Idaho in the case of New First Nat. Bank v. City of Weiser, 30 Idaho, 15, 21, 166 P. 213, 215, supra, from which we quote as follows:

"And it is provided that if any of the property owners pay their special assessments, they are entitled to be credited on their accounts as shown by the roll, both for interest and principal, and the roll should show such payments. The amounts having been thus charged to each piece of abutting property and paid by each property owner for the purpose of paying off his liability under such assessments, both principal and interest, the city authorities would have no authority under said act to divert the money so paid by the property owner to the payment of interest or principal due from abutting property owners who failed or neglected to pay their assessments as required by law.

We do not think the city treasurer, under said act, would have the authority to divert the funds thus collected to the payment of the interest due from a delinquent. When a property owner pays his assessment as provided by said act and the city ordinance, the money arising therefrom is apportioned to the improvement district fund, and from that fund the money is paid over to the holders of the bond for the purpose of paying interest on unpaid installments, and the payment of the matured bonds themselves, as far as the money collected will go. Neither the statute nor the ordinance of the city authorizes any other method of distributing the funds than was used by the city treasurer.

"The benefit assessed to each lot or parcel of ground abutting on such improvement is made liable for the payment of such assessment, and if the city shall fail, neglect, or refuse to pay such bonds, or promptly collect any such assessments when due, the owner of any such bonds may proceed in his own name to collect such assessments and foreclose any lien thereon in any court of competent jurisdiction, and shall recover in addition to the amount of said bonds and interest thereon, 5 per centum, together with the costs of such suit, including a reasonable sum for attorney's fees. Sess. Laws 1911, p. 274. * * *

"The bondholder can have no claim against the city on account of the debt created by the bond, and the bondholder is given no right as against a taxpayer who has paid all of his assessments. Such taxpayer has cleared himself from all liability on account of the bond issue, or in proportion to the time he has paid; that is to say, if he has paid up his assessments for three years, he has discharged that proportional part of his share of the bonded indebtedness, and the city authorities would have no right to divert any portion of the principal and interest paid by such taxpayer to the payment of the interest and principal on such bonds owed by a delinquent taxpayer."

We therefore agree with the appellee's statement of the law as follows: "It should be remembered that these bonds are but the evidence of the obligation created by the assessments; the only lien is that created by the assessments and the bonds are only issued to permit payments to be made in installments over a period of years. Balaam v. Pacific States S. & L. Co. (Cal. App.) 15 P.(2d) 186."

█ That an assessment had been made for the full cost of the improvement involved herein, and that such amount was equal to the par value of the bonds issued to pay the cost thereof, is conceded. It is contended, however, that the assessments to pay interest on the bonds were inadequate by reason of the failure to include any interest in the first annual assessment and by reason of the fact that the principal of the bonds was so divided that moneys paid in upon said assessment could not be immediately applied to the payment of bonds, and also by reason of its failure of the city and county authorities to apply moneys paid in by the property holders upon their assessments to the payment of bonds when available therefor. Furthermore, by reason of failure to include in the assessments the cost of collection charged by the county officials and fixed by statute amounting to 1½ per cent., the assessments levied were inadequate to pay the bonds and interest. One reason for the failure to apply the payments received from the property holder upon the bonds issued for the improvements was that some of the money was on deposit in the First National Bank of American Falls at the time it failed. These deposits are stated to be as follows:

$1,168.73 as to improvement district No. 1.

$60.51 as to improvement district No. 2.

$2,155.95 as to improvement district No. 8.

$3,031.15 as to improvement district No. 9.

The difference between the principal of the bond issues in the improvement districts and the amount set up on the assessment roll as principal is testified to be as follows:

| Dist. No. 1, principal of bonds, | $24,000 | |
|---|---|---|
| assessment roll, | | $23,638.04 |
| " " 2, principal of bonds, | 7,150 | |
| assessment roll, | | 7,151.51 |
| " " 8, principal of bonds, | 21,506.05 | |
| assessment roll, | | 22,040.20 |
| " " 9, principal of bonds, | 25,219.25 | |
| assessment roll, | | 25,216.78 |

—with no provision to pay the county 1½ per cent for collection. The original assessment made to pay for the improvements is by the provisions of the Idaho statute (§ 4010 I. C. S.) "a final determination of the regularity, validity and correctness of said assessment of the amount thereof assessed on each lot and parcel of land." As these amounts assessed were paid at the time the United States took possession of the land, it acquired the same from the owners free from all liens upon the property arising from assessments then made. The bonds did not constitute a

lien upon any specific piece of property and the fortuitous circumstances that all the land within three of the districts has been acquired by the United States cannot alter the effect of the bonds or establish a lien upon the whole area for the amounts of all or any of the bonds remaining unpaid. Assuming that under section 4024, I. C. S., supra, there was a right in the city to reassess by supplementary assessment upon the property within the district amounts inadvertently omitted from the first assessment roll to correct errors or mistakes in the amount assessed originally (section 4024, I. C. S., supra), such amount so omitted was not and could not be a lien upon property under the terms of the law unless and until so reassessed.

Now it is conceded that the reassessments authorized by the city council of the city of American Falls in pursuance of section 4024, I. C. S., supra, July 3, 1928, are void because the property assessed at that time belonged to the United States and was exempt from local taxation. This concession is apparently based upon the decision of the District Court, U. S. v. Pierce County, 193 F. 529, 530, in an action to cancel certain taxes on lots in Tacoma, Wash., which had been purchased by the United States as a site for a post office, courthouse, and customs house. It appeared in that case that although tax proceedings were under way, the lien of the tax had not accrued at the time of the transfer to the United States. It was, therefore, held that the tax was void. The statute of Washington involved in that case provided that: "The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the first Monday of February of the succeeding year." The court there said: "The transfer of title to the United States operates to withdraw the property from all the effects of subsequent state action and subjects it to the sole jurisdiction of the United States. As to such property all incomplete state proceedings must fall. To hold otherwise would be to hold that boards of equalization, boards of county commissioners, and city councils can meet and deliberate as to the valuation for taxation purposes of property over which the government of the United States is vested with the power of exercising 'exclusive legislation in all cases whatsoever,' and can by their votes and proceedings determine how large or how small a tax such property shall be required

to pay." The court in that case cites Bannon v. Burnes (C. C. ) 39 F. 892, with relation to a federal building, stating that: "By the city charter the lien for city taxes attached on January 1st, but the levy was not actually made until the third Monday in April. This site was acquired by the United States on April 9th, and it was held not subject to taxation by the city for that year."

These cases (U. S. v. Pierce County [D. C.] 193 F. 529, supra; Bannon v. Burnes [C. C.] 39 F. 892, supra) are cited with approval and followed by the Circuit Court of Appeals of the Second Circuit in the late case of U. S. v. City of Buffalo, 54 F.(2d) 471, 473. In the latter case the charter of the city of Buffalo provided that the taxable status of all property should be fixed each year on the 1st day of December for the following fiscal year; that the assessment roll should be completed on or before the 1st day of March, whereupon notice that the assessment rolls have been finally completed should be published by the assessor and on the first day of June the assessor should give notice that the payment of local assessments returned on the general tax rolls one-half on city tax, etc., shall be payable and that "all taxes and assessments, together with interest thereon as provided by law, shall be liens upon the lands upon which they are assessed from the time of the publication of the notice by the Assessor required by this section until paid, and shall be preferred in payment to all other charges." The United States acquired the property by deed dated April 16, 1920. The majority of the court stated: "By the defendant's charter, therefore, the publication of this notice [by the assessor] was necessary to create a lien on the property for these taxes." It was therefore held that although the statute provided that the lien should relate back to the 1st of March which would antedate the acquisition of the property by the United States, that the lien not having attached at that time and publication of notice being a condition precedent to the creation of a lien that there was no valid lien when the government took title. Accordingly the court said: "We entertain no doubt that when the United States took title, the property was unincumbered by any lien for taxes. * * * The important reason no such lien could come into being without the consent of the federal government after it took title lies in the fact that taxation of the property of the United States depends wholly upon the will of its owner." Circuit Judge L. Hand, however, dissented from this view and in a

concurring opinion stated as follows: "On the other hand I do not understand it to be disputed that when the United States takes over property, it takes it subject to whatever liens are upon it, tax liens like the rest. If the law of a state were that all taxes should be liens as of March first, the time of the assessment, but might be computed, levied and extended on the rolls before July first, I see no reason why they should not be a lien upon land conveyed to the United States on March second. The act of liquidating and formally imposing the tax would not in my judgment be in defeasance of the sovereignty of the United States. I cannot agree with the contrary ruling in U. S. v. Pierce County (D. C.) 193 F. 529. Bannon v. Burnes (C. C.) 39 F. 892, contains a dictum in accord, but it was altogether unnecessary to the result. The levy and extension on the rolls are not adversary proceedings against the United States, like an arrest or seizure of its property; they do no more than fix the amount of a charge already imposed, and the liquidation does not depend upon questions in which the United States is interested except as all other owners of property. They are not directed against it individually, as is a suit, or a condemnation."

While it is conceded in the case at bar that the assessment made by the city of American Falls was void by reason of the fact that the government owns the property subjected to the assessment, we are inclined to agree with the position taken by Circuit Judge L. Hand in his concurring opinion. If then we assume that the city had a right to make a supplementary assessment to correct inaccuracies and inadvertences in the first assessment after the transfer to the United States, it follows that this right was not "taken" or lost by the transfer of the property in the district to the United States. If, on the other hand, there was no longer a right to reassess the property, nothing was taken by the United States, for the reassessment itself was an essential prerequisite to any enforcement of the right of the bondholder in and to any specific piece or pieces of property within the district. It was essential that such reassessment should follow the original apportionment of benefits made under and by virtue of the authority of the legislature of the State of Idaho as embodied in its statutes. Until such a reassessment authorized by statute had been imposed upon the property the bondholders had no right which could either be enforced by them in any or all the property in the improvement district

or interfered with by the government. The apportionment of the amount included in the assessment or reassessment was essentially an act of the taxing power. Until that power had been exercised there was no method of enforcing the inchoate rights of the bondholders except by proceedings having for their purpose the compelling of city authorities to exercise their power. Lumbermen's Trust Co. v. Town of Ryegate (C. C. A.) 61 F. (2d) 14. We are not wholly without authority on this point. In the case of Beezley v. City of Astoria, 126 Or. 177, 269 P. 216, 218, 60 A. L. R. 504, the Supreme Court of Oregon had under consideration the effect of the judgment quieting the title of the owner as against an assessment for street improvements where reassessment was subsequently made to correct errors invalidating the first assessment under a charter of the city of Astoria making provision for such reassessment. It was held that the judgment quieting the owner's title against the city did not affect the right of reassessment for the reason that such right was not a claim or interest in the real estate. The court stated the proposition thus: "While the courts have placed a liberal meaning upon the words 'claim' and 'interest' when found in such statutes [citing cases] we know of none so inclusive that it would include this quiescent duty which required legislative action before it could be converted into a potent claim. The property's duty constituted the foundation for valid legislation. But, without it, the duty was not a legal liability. This was the conception developed in Brown v. Silverton, 97 Or. 441, 190 P. 971. Hence we do not believe that this moral duty constituted a claim, interest, or estate in the plaintiff's properties which the city was compelled to set forth lest it be swept away by a default decree." The charter of Astoria (section 80) provided, in effect, that "whenever any assessment for street improvement shall be set aside or its enforcement enjoined by any court, or when the council shall be in doubt as to the validity of such assessment or any part of it, it may by ordinance make a new assessment; the re-assessment shall become a charge upon the property." The court quotes with approval the language of Judge Wolverton in Thomas v. Portland, 40 Or. 50, 66 P. 439, as follows: "The rationale upon which such curative legislation proceeds is that there has been a futile attempt to levy an assessment, where the parties affected are in justice and in equity bound to contribute to the public demand, and that they ought not to be per-

mitted to escape the burden by reason of some oversight or nonobservance of the prescribed mode of proceeding in the first instance, where the irregularities do not extend to an act or omission that the Legislature is without power to authorize primarily. In all such cases the Legislature may prescribe a new remedy, so as to require payment, when justice and equity demand it." To a similar effect is Duniway v. Portland, 47 Or. 103, 81 P. 945, 947, where, referring to such curative legislation, it is said that it "is designed to supply a curative procedure to supplement the preceding one that has failed. It awards a new and supplementary remedy for impressing upon the abutting property a lien for the cost of the special benefits, not to exceed the original cost of the improvement, because of the failure in the first instance to carry the undertaking to a successful termination." In Beezley v. City of Astoria, supra, in disposing of the contention that the first judgment quieting title against the lien of the first assessment was res judicata, the court likened the first judgment to one quieting title against the mortgage lien, stating that this did not extinguish the debt, and, by analogy, held that the right of reassessment was analogous to the right of a mortgagor to recover his indebtedness although his lien was lost. Upon that subject we quote from the opinion as follows: "Hence we cannot say that the equitable debt chargeable against the plaintiffs' premises was necessarily adjudicated when the city suffered the decree [quieting title] to be entered. It is perhaps needless to cite authorities to the effect that the adjudication of a lien against the claimant does not extinguish the debt secured by it."

In view of the statute of Idaho which makes the assessment a lien from the time it is made, and the above definition of a similar right of reassessment by the Supreme Court of Oregon which we consider sound, it is clear that the right to a reassessment, or a supplementary reassessment, does not rise to the dignity of a lien upon or claim to the several pieces of land which are included in the improvement district. At most there is a moral right which the Legislature of the state can recognize and enforce and which it has recognized by the statute authorizing a supplementary assessment to cover mistakes or inadvertences in previous assessments. Stats. section 4024, I. C. S., supra. See also Columbia Heights Realty Co. v. Rudolph, 217 U. S. 547, 554, 30 S. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854; Reiff v. City of Portland, 71 Or. 421, 141 P. 167, 142 P. 827, L. R. A. 1917D, 772; Cowart v. Union Paving Co. (Cal. Sup.) 14 P.(2d) 764, 767. Until the authorized action is taken the bondholder or the city representing him has an inchoate interest in the specific pieces of property predicated upon the moral and legal right to reassess in the case of the invalidity of the original assessment or to supplement the original assessment in the event of its insufficiency by reason of mistakes or inadvertences.

It follows from what we have said that the United States is not liable for an appropriation of an interest of the bondholders in the property within the improvement district, for they had no interest at the time the United States government acquired title, nor had they such a lien at the time the property was flooded. In the absence of a lien for said bonds the complaint of the bondholder is reduced to the proposition that the acquisition of the property within the district by the United States prevented the effective enforcement of this inchoate moral right of reassessment and therefore that their property has been taken by the United States and that an implied promise to pay the balance due upon the bonds arose from the act of taking this inchoate right. In the case at bar brought under the Tucker Act (24 Stat. 505) we are not dealing with the moral obligations of the government arising from the interference with the plaintiff's rights, if any, but with the more limited question as to whether or not the plaintiff is empowered to sue the sovereign by the permissive terms of that act which only authorizes suits upon contracts express or implied. The plaintiff's proposition, therefore, is that there is an implied contract on the part of the government to pay the amount of the inchoate liens which otherwise might have matured into actual liens by reassessment.

█ Even if we assume that there was a valid lien upon the property acquired by the government, another difficulty with the theory of an implied promise on the part of the government to pay the lien arises from the proposition that the mere purchase of land by an individual within the limits of the district creates no liability on the part of the owner to pay an assessment upon his land or to pay the bonds of the district. There is no personal obligation. It is a lien upon the land which he can pay or not, as he pleases. It must be conceded that by the mere acquisition of the land in question the government was

under no greater obligation by reason of its purchase, consequently, that there was no personal obligation to be reduced to personal judgment by an action brought under the Tucker Act unless it be by reason of the fact that the bond owners can no longer invoke the remedies provided by the Idaho statute for the collection of the amount due them by a suit to foreclose the lien of the assessment, for the reason that such a suit cannot be brought against the United States government to enforce a lien upon the lands of the government, not because there is any difference in the moral obligations of the government as distinguished from those of private individuals, but by reason of the doctrine that the sovereign power cannot be sued in its own courts without its consent. It is therefore argued in effect that inasmuch as the government has not consented to the foreclosure of lien upon its land it must be deemed to have agreed to pay the amount which would be realized from such a foreclosure. In short, it is contended that the refusal of the sovereign to permit a foreclosure suit to enforce a lien against property acquired by it for public purposes amounts to a taking of the lien from which taking an implied contract to pay therefor arises from which a consent to sue the United States is derived. Thus, from a refusal (or failure) to permit a suit to be brought against the United States a consent thereto is to be implied. This does not seem to be a tenable position. If we are correct in this analysis of plaintiff's position that the alleged taking arises from the inability to enforce the lien against the government; then such taking occurred more than six years before suit was brought, namely, when the government acquired the property for a reservoir site. Flooding the property was not a taking where the property was already acquired for and dedicated to that purpose. The suit is too late and the District Court had no jurisdiction thereof under the Tucker Act. We place our decision also upon the ground that there was no enforceable lien upon the property acquired or used by the United States either at the time of its acquisition or use, and, hence, there was no taking of private property.

Judgment reversed, with instructions to enter a judgment upon the pleadings and findings in favor of the United States, dismissing the action for lack of jurisdiction. Claimant must seek such redress as may be appropriate from the Congress.